## In The Matter Of:

*James H. Gorbey, Jr. v.*
*Ashland Construction Co., et al.*

---

*Vincent Rizzo*
*December 30, 2004*

---

*B&R Services for Professionals, Inc.*
*235 S. 13th Street*
*Philadelphia, PA 19107*
*(215) 546-7400*
*FAX (215) 985-0169*

Original File 12304MP1.V1, Pages 1-65

**Word Index included with this Min-U-Script®**

Case 1:05-cv-00211-MPT   Document 81-7   Filed 04/17/2006   Page 2 of 7

Vincent Rizzo                                         James H. Gorbey, Jr. v.
December 30, 2004                              Ashland Construction Co., et al.

Page 5

[1]     My name is Mike Small. I represent
[2] Ashland Construction Company, Vincent
[3] Rizzo Construction, Inc. doing business
[4] as Ashland Construction Company, Joseph
[5] Rizzo and Vincent Rizzo.
[6]     We had an off the record discussion
[7] in that we were trying to figure out the
[8] entities that were named by the
[9] plaintiff in this case. I informed Mr.
[10] Casey that the only entity in business
[11] at that time was Ashland Construction,
[12] Inc., was owned by Joseph Rizzo and
[13] Vincent Rizzo. That was the entity that
[14] was on-site at the Longwill residence on
[15] the date of this incident.
[16]     Vincent Rizzo Construction Company
[17] did not exist at the time of this
[18] incident. And as far as Joseph Rizzo
[19] and Sons Construction, I do not
[20] represent them but it is my
[21] understanding that they are owned by a
[22] relative of Joseph and Vincent Rizzo and
[23] neither Mr. Rizzo or Joseph Rizzo worked
[24] for that company or have any ownership

Page 6

[1] interest, do not having any contact with
[2] it other than being familier, like a
[3] cousin.
[4]     MR. CASEY: Thank you, Mr. Small.
[5]     MR. SMALL: Can you hear us okay?
[6]     MR. CASEY: I can.
[7]     MR. SMALL: If you have any problems
[8] let us know. Like I said, Vincent Rizzo
[9] is here to testify regarding
[10] jurisdictione today, pursuant to Judge
[11] Brody's order. And we are still doing a
[12] search for any documents regarding the
[13] Longwill residence.
[14]     MR. CASEY: Right. There is
[15] outstanding discovery other than the
[16] jurisdiction issue. And I understand
[17] you will be getting that to me.
[18]     MR. SMALL: It is being mailed out
[19] but we are still doing a document search
[20] as that is much more extensive.
[21]     MR. CASEY: All right, thank you.
[22] BY MR. CASEY:
[23] Q. Mr. Rizzo, good morning.
[24] A. Good morning, how are you.

Page 7

[1] Q. I'm doing fine, thank you. This should
[2] be rather brief and I appreciate you're taking
[3] the time to do this today. Can I have your
[4] give full name?
[5] A. Vincent J. Rizzo.
[6] Q. What is your home address?
[7] A. 16 Holly lane, Wilmington, Delaware
[8] 19807.
[9] Q. Sir, in August of 2002 did you own, in
[10] part, own a company called Ashland Construction
[11] Company, Incorporated?
[12] A. That's correct, sir.
[13] Q. Who else owned Ashland Construction
[14] Company, Incorporated in August of 2000?
[15] A. It was a partnership between my brother
[16] and I, which was --
[17] Q. What is your brother's name?
[18] A. Joseph P. Rizzo.
[19] Q. What is Joseph P. Rizzo's home address?
[20] A. 900 Butler Avenue, that is Wilmington,
[21] Delaware, the zip, I'm not sure of the zip
[22] code.
[23] Q. Did you and your brother, Joseph, own
[24] Ashland Construction Company, Incorporated as a

Page 8

[1] partnership on August 30, 2002?
[2] A. That is correct, sir.
[3] Q. Since that date has the ownership of the
[4] company changed in any respect?
[5] A. Actually since, since that date the
[6] company is no longer in business.
[7] Q. As of what date was it no longer in
[8] business?
[9] A. I would say as of November.
[10] Q. 2004?
[11] A. 2004, yes.
[12] Q. Did any corporate entity, or partnership
[13] take the place of Ashland Construction Company,
[14] Incorporated?
[15] A. No. I mean, it is, I mean Ashland
[16] Construction was dissolved. And that was the
[17] extent of it. Ashland was not operating as a
[18] company name.
[19] Q. Do you recognize the entity Vincent Rizzo
[20] Construction Company, Incorporated?
[21] A. Correct.
[22] Q. You do recognize it?
[23] A. It is, I don't understand the question.
[24] Q. Do you recognize that entity? Do you

Page 9

[1] know what it is?
[2] A. It is Vincent Rizzo Construction, yes.
[3] Q. What is it?
[4] A. It is actually, it's a Construction
[5] Company, that doesn't, it doesn't really
[6] operate as construction. It's just a property
[7] holder where our office is at.
[8] Q. What is the relationship, if any, or what
[9] was the relationship, if any, between Ashland
[10] Construction Company, Incorporated and Vincent
[11] Rizzo Construction Company, Incorporated?
[12]     MR. SMALL: As of what time?
[13] BY MR. CASEY:
[14] Q. As of at any time since August 30, 2002
[15] and including that date, sir?
[16]     MR. SMALL: Do you know when Vincent
[17] Rizzo Construction Company started to
[18] exist?
[19]     THE WITNESS: Actually Vincent Rizzo
[20] existed for a period of time, that was
[21] actually my father's company. It was
[22] actually a union shop way back when.
[23] But the actual company now, the company
[24] never operated in the construction

Page 10

[1] field. It just held the property where
[2] our office was.
[3] BY MR. CASEY:
[4] Q. As of August 30, 2002, on that date, did
[5] Vincent Rizzo Construction Company,
[6] Incorporated exist?
[7] A. As of that date, the actual, the company
[8] was to hold, held the property. Yes, there was
[9] a Vincent Rizzo Construction Company.
[10] Q. On that date, August 30, 2002?
[11] A. Correct.
[12] Q. Were any persons affiliated with Vincent
[13] Rizzo Construction Company, Incorporated on the
[14] premises at 3220 Coachman Road in Wilmington on
[15] August 30, 2002?
[16] A. No, sir.
[17] Q. What was your affiliation with Vincent
[18] Rizzo Construction Company, Incorporated as of
[19] August 30, 2002?
[20] A. It was just a property holder, the
[21] company never operated as construction, it just
[22] held property.
[23] Q. Did the company have any employees?
[24] A. No, sir.

Page 11

[1] Q. I understand I think. Did Ashland
[2] Construction Company, Incorporated have any of
[3] its employees on the premises of the 3220
[4] Coachman Road address on August 30, 2002?
[5] A. Yes, it was myself and a laborer, a
[6] helper, which was Salvador Ortiz.
[7] Q. Were there any other persons affiliated
[8] with Ashland Construction Company, Incorporated
[9] on the premises of 3220 Coachman Road on August
[10] 30, 2002 besides yourself and Mr. Ortiz?
[11] A. No, sir.
[12] Q. Where does Salvador Ortiz live?
[13] A. Mexico. As far as an address in Mexico,
[14] I have no clue what it as.
[15] Q. When did he return to Mexico?
[16] A. I would say over a year and a half ago.
[17] Q. Was he in this country legally as of
[18] August 30, 2002?
[19]     MR. SMALL: Objection, this is for
[20] jurisdiction for Ashland Construction,
[21] Vincent Rizzo Construction, Joseph
[22] Rizzo. He is not party. This is beyond
[23] Judge Brody's order. I'm going to
[24] instruct him not to answer.

Page 12

[1]     MR. CASEY: Mike, the reason I'm
[2] asking, at this juncture, is it does
[3] relate to venue and jurisdiction. At
[4] least it's reasonably calculated to.
[5] What I'm interested in knowing is where
[6] he came across Mr. Ortiz and if he is in
[7] this country, was in this country
[8] legally, I could obtain additional
[9] documentation to that effect.
[10]     I want to learn whether, for
[11] example, Mr. Rizzo recruited Mr. Ortiz
[12] from Pennsylvania or Philadelphia,
[13] that's why I'm asking the question.
[14]     MR. SMALL: You can ask that
[15] question, that's a totally different
[16] question than what you asked.
[17]     MR. CASEY: If he is in the country
[18] legally then there would be
[19] documentation to that effect and I can
[20] find out where the man hales from. That
[21] is the reason I'm asking.
[22] BY MR. CASEY:
[23] Q. What is your understanding, sir, of Mr.
[24] Ortiz' citizenship status as of the time that

Page 13

[1] you employed him?
[2] A.  At the time he had a license number, a
[3] Social Security number, what it was, which I
[4] have to get back to my secretary and find out
[5] as far as all the paperwork and what she
[6] received on him. I mean, as far as I know,
[7] that's about as far as I can tell you about his
[8] status.
[9] Q.  Was he on your payroll?
[10] A.  Yes.
[11] Q.  As of August 30, 2002?
[12] A.  Yes.
[13] Q.  You employed him on that date, sir?
[14] A.  Yes.
[15] Q.  Did your brother, Joseph Rizzo, have any
[16] role in the work that was being done at the
[17] 3220 Coachman Road address on August 30, 2002?
[18] A.  No, sir.
[19] Q.  What was his role in the company as of
[20] that date, August 30, 2002?
[21] A.  He was president of the company.
[22] Q.  What was the business address of Ashland
[23] Construction Company on August 30, 2002?
[24] A.  PO Box, actually, the actual mailing

Page 14

[1] address was PO Box 283. That was Manchannin,
[2] Delaware, 19710.
[3] Q.  That was PO box?
[4] A.  283.
[5] Q.  And where did you actually have your
[6] physical plant where you worked?
[7] A.  That was actually at 1800 West 11th
[8] Street.
[9] Q.  In Wilmington?
[10] A.  Yes.
[11] Q.  Did you have any other business
[12] addresses, that is Ashland Construction
[13] Company, Incorporated?
[14] A.  No.
[15] Q.  What was your position at the company as
[16] of August 30, 2002?
[17] A.  Vice-president, secretary, and I guess
[18] all the other things that went into it.
[19] Q.  In what business was Ashland Construction
[20] Company, Incorporated on August 30, 2002?
[21] A.  I'm sorry, repeat that.
[22] Q.  What did you folks do, what was your
[23] business?
[24] A.  Our main line is all masonry concepts of

Page 15

[1] work, block, brick, stones, stucco. Anything
[2] that falls in the masonry lines.
[3] Q.  What was the mix of your work between
[4] residential and business masonry work?
[5] A.  I'm not, I don't understand the question.
[6] Q.  To what extent did you work at homes as
[7] compared to, you know, businesses addresses,
[8] like for companies, for example?
[9] A.  I'm not following his question.
[10]    MR. SMALL:  He is still not following
[11] your question.
[12] BY MR. CASEY:
[13] Q.  Did you do primarily residential masonry
[14] work?
[15] A.  We did residential and we did commercial
[16] also.
[17] Q.  That's the word I should have used,
[18] commercial.
[19] A.  I was trying to understand what you were
[20] trying to ask.
[21] Q.  The word didn't come out, I apologize.
[22] What was the mix of your work as between
[23] residential and commercial?
[24] A.  As far as percentage, how much commercial

Page 16

[1] as compared to residential?
[2] Q.  Yes.
[3] A.  I guess I really have to say probably
[4] about fifty/fifty. I would say actually the
[5] bulk of it is residential that we do, I would
[6] probably say about 45 percent commercial.
[7] Q.  Did Ashland Construction Company,
[8] Incorporated ever do masonry work in the
[9] Commonwealth of Pennsylvania?
[10] A.  Gosh, it is so small. I mean, it is such
[11] a small amount, if anything.
[12] Q.  My question is did Ashland Construction
[13] Company ever do masonry work in Pennsylvania?
[14] A.  Yes.
[15] Q.  When did Ashland Construction Company
[16] first do masonry work in the Commonwealth of
[17] Pennsylvania, approximate date?
[18] A.  I cannot even begin to answer that
[19] question, I have no idea.
[20] Q.  Do you have records, do you believe, that
[21] would reflect your Pennsylvania clients?
[22] A.  I would have to go back and check. If
[23] anything for, if anything I would have to check
[24] to see, it's probably most likely would be

**Page 17**

[1] residential, which I would have to check on
[2] them records.
[3] Q. My question is do you believe you have
[4] records that would reflect your Pennsylvania
[5] clients?
[6] A. I don't understand that question.
[7]     MR. SMALL: He doesn't understand,
[8] Matt.
[9] BY MR. CASEY:
[10] Q. Do you keep records, sir, that if one
[11] were to search, one would be able to determine
[12] precisely those clients of yours that hale from
[13] Pennsylvania?
[14] A. If so, I mean, it's so small, I mean, I
[15] would not even know. Like I said, there's a
[16] very little bit amount of work we do in
[17] Pennsylvania.
[18] Q. My question though, sir, is different
[19] than, I know you want to tell me it's a small
[20] amount. I just want to know, first very
[21] basically, do you believe that documents exist
[22] that would tell a person, searching for
[23] documents, relating to Pennsylvania, precisely
[24] who your Pennsylvania clients are?

**Page 18**

[1] A. No, I doubt it. I mean I can, the only
[2] one I would be able to check would be my
[3] bookkeeper and see if she can go back that far
[4] and whatever she could find into it, into my
[5] file.
[6] Q. What do you mean when you say go back
[7] that far?
[8] A. I mean, go back a year and see if there
[9] are documents in there for Pennsylvania, but I
[10] doubt there would even be, because there's such
[11] a little amount of work that was done.
[12] Q. I will give you the opportunity now to
[13] tell me, if you would, in more detail what you
[14] mean when you say a little amount. Can you
[15] give me a percentage of your business?
[16] A. Less than one percent.
[17] Q. How much money do you believe your
[18] company has earned in gross receipts, not
[19] profit, in gross receipts, from masonry work
[20] done in the Commonwealth of Pennsylvania?
[21] A. Gosh, four, maybe five thousand, if that
[22] seven, maybe in that area, that's what the
[23] amount would be.
[24] Q. Where did your company do work in

**Page 19**

[1] Pennsylvania, where specifically?
[2] A. I mean, we did a couple, actually my
[3] brother may have done a little bit up there for
[4] homeowners, a couple small jobs for them.
[5] That's the extent of it.
[6] Q. When did that occur?
[7] A. I don't even know the dates what it would
[8] have been.
[9] Q. Did you ever do work in Pennsylvania?
[10] A. Small amounts.
[11] Q. I know it's small amounts. My question
[12] is, if you would, just listen to my question.
[13] My question at this point is, did you ever do
[14] work in Pennsylvania? The answer to that I
[15] assume is yes?
[16] A. Correct.
[17] Q. When did you last do work in the
[18] Commonwealth of Pennsylvania?
[19]     MR. SMALL: Matt, you want his best
[20] estimate?
[21] BY MR. CASEY:
[22] Q. Sure.
[23] A. I would say probably six months, seven
[24] months ago.

**Page 20**

[1] Q. Where?
[2] A. Actually Lomax Carpet.
[3] Q. Lomax Carpet in Philadelphia?
[4] A. In Philadelphia.
[5] Q. For whom were you doing work at Lomax
[6] Carpet in Philadelphia?
[7] A. Actually for, actually John Manger got a
[8] hold of me and said we need to do a little bit
[9] of work up in that area.
[10] Q. Who is that person, sir?
[11] A. He is actually Air Base Carpet's
[12] construction manager.
[13] Q. Can you spell his last name?
[14] A. M A N G E R.
[15] Q. Where does he work out of?
[16] A. As far as if --
[17] Q. If you wanted to find him, where would
[18] you call?
[19] A. Actually I would call Air Base Carpet in
[20] New Castle.
[21] Q. And Mr. Manger, who to your
[22] understanding, works out of the New Castle
[23] building, called you and told you that he
[24] wanted you to do some work at the Lomax Carpet

Page 21

[1] address in Philadelphia?
[2] A. Correct.
[3] Q. What did you do?
[4] A. Gosh, just re-pointing up a wall inside
[5] the stair tower.
[6] Q. How much did you charge them for that
[7] job?
[8] A. I think right around seven thousand.
[9] Q. I would like you, if you would, to have
[10] your office check for the receipts from that
[11] job specifically?
[12] A. Yes.
[13] Q. Towards the end of answering my discovery
[14] request on the subject of contacts with the
[15] Commonwealth of Pennsylvania. Will you do
[16] that?
[17] A. Yes.
[18] Q. Did Ashland Construction Company, Inc. do
[19] any masonry work at any other carpet marts in
[20] the Commonwealth of Pennsylvania besides Lomax
[21] on that date of approximately six months ago?
[22] A. No, sir.
[23] Q. How many times have you, yourself, been
[24] to the Lomax Carpet address?

Page 22

[1] A. I would probably say every bit of a dozen
[2] times, half a dozen times, I go up and take a
[3] look at some stuff that was, needed to be done
[4] up there. Or just different issues, a little
[5] bit of advice of what had to be done with
[6] certain things.
[7] Q. I'm sorry, you have been there about a
[8] half a dozen times?
[9] A. I would say about a half a dozen.
[10] Q. Were you ever at that address other than
[11] the job that you told me about that you did
[12] about six months ago?
[13] A. No.
[14] Q. So the times that you were there were
[15] specifically relating to the job that you did
[16] approximately six months ago at the Lomax
[17] Carpet address?
[18] A. Correct.
[19] Q. On how many occasions do you believe that
[20] Ashland Construction Company, Inc. did work for
[21] Air Base Carpet Mart or any of its affiliates?
[22] MR. MINTZER: Objection to the form.
[23] MR. SMALL: Again, when you're
[24] talking about work, are you talking in

Page 23

[1] Delaware or in Pennsylvania?
[2] MR. CASEY: Any work.
[3] MR. MINTZER: I object to the phrase
[4] and any other of its affiliates.
[5] MR. CASEY: I understand that
[6] objection. To the extent the witness
[7] understands the question I would like to
[8] know, to what extent Ashland
[9] Construction Company, Inc. did work for
[10] Air Base.
[11] MR. SMALL: That's a different
[12] question.
[13] MR. CASEY: Why don't you let him
[14] answer the question. You can state your
[15] objection and we can probably get
[16] through this.
[17] MR. MINTZER: Objection to that last
[18] question.
[19] THE WITNESS: Repeat the question.
[20] BY MR. CASEY:
[21] Q. Sir, tell me the extent to which Air Base
[22] -- I'm sorry, Ashland Construction Company,
[23] Inc. did work for Air Base?
[24] A. When you say extent, I don't know what

Page 24

[1] you mean extent.
[2] Q. You just told me about one job.
[3] A. That's about the, I mean, that was it.
[4] There wasn't a whole lot more after that. That
[5] was the extent of it from that time.
[6] Q. From what time? I didn't even give you a
[7] time. I just want to know any other jobs that
[8] you did for Air Base?
[9] A. I mean, Mr. Casey, I'll have to go back
[10] and list them. I don't remember them off the
[11] top of my head.
[12] Q. Can you give me your best estimate? I'm
[13] not asking for specific jobs. I need your best
[14] estimate for, start with this, the number of
[15] occasions on which Ashland Construction Company
[16] was hired by Air Base?
[17] A. Per year?
[18] Q. You can tell me in any respect?
[19] A. Per year I would say maybe once, twice a
[20] year.
[21] Q. Going back how many years?
[22] A. I guess for a couple years, about four or
[23] five years.
[24] Q. Going back to about the year 2000 you did

| James H. Gorbey, Jr. v. | Vincent Rizzo |
|---|---|
| Ashland Construction Co., et al. | December 30, 2004 |

### Page 57

MR. SMALL: That is clearly not what you requested in the production for documents.

BY MR. CASEY:
Q. Did you search for any such documents?
  MR. SMALL: I'm going to object to the form. You keep asking him the same question.
  MR. CASEY: And it has not been answered.

BY MR. CASEY:
Q. Sir, have you searched for any such documents?
  MR. SMALL: Just don't answer the question. This is getting ridiculous, Matt.
  MR. CASEY: All right. Mark that page also.

BY MR. CASEY:
Q. Sir, where physically would you look, if you wanted to find documents relating to your business activities with your Ridley Park supplier?
A. I mean, as far as where my materials

### Page 58

would go?
Q. Where would the documents be located?
A. Certainly within the filing system, which the bookkeeper would have kept.
Q. Where is that filing system located?
  MR. SMALL: Again, we're going around in circles. Don't answer that question. We're doing a search, an ongoing search but you're not going to go in and rifle through the files. That is exactly what is not going to happen.

BY MR. CASEY:
Q. Where are the files located?
  MR. SMALL: Don't answer the question.
  MR. CASEY: Mark that page too.

BY MR. CASEY:
Q. Is there a bookkeeper today, sir?
A. No.
  MR. SMALL: Again, for which entity?

BY MR. CASEY:
Q. For any of Ashland Construction Company, Incorporated's documents?
  MR. SMALL: As of today Ashland

### Page 59

Construction doesn't exist, as he testified to earlier. It ended November 2004, how would there be a bookkeeper?
  MR. CASEY: Mike, why don't you let him answer that question?
  THE WITNESS: No, there is not a bookkeeper for Ashland as of this time.

BY MR. CASEY:
Q. Where are the records located today?
  MR. SMALL: Again, don't answer the question. You're going through the same question eight times. You're not going to get the answer.

BY MR. CASEY:
Q. Sir, was the job that you were doing at the Coachman Road address, in any respect, a block job?
A. No, sir.
Q. Where did you receive the materials for the job that you were doing at the Coachman Road address?
A. Delaware Brick.
Q. Sir, do you own any property, you yourself?

### Page 60

A. I mean as far as where I live at?
Q. Do you own any properties?
A. Well, where I live, my house.
Q. Other than your house, do you own any other properties?
A. I got, actually a place, actually a place on Maple Avenue in Elsmere.
Q. Where is that, in Delaware?
A. That's in Delaware.
Q. Do you own any properties in Pennsylvania?
A. No, sir.
Q. Where did Ashland Construction Company, Inc. deposit money, if any bank?
A. WSFS.
Q. Can you spell that out?
A. Wilmington Savings Fund Society.
Q. Did Ashland Construction Company, Inc. receive any materials from any Pennsylvania entity other than the Ridley Park supplier?
A. No.
Q. Other than actual masonry work that you would do, upon being hired for a job, did Ashland Construction Company Inc. engage in any