# In The Matter Of:

*James H. Gorbey, Jr. v.*
*Ashland Construction Co., et al.*

*Richard Longwill*
*December 6, 2004*

*B&R Services for Professionals, Inc.*
*235 S. 13th Street*
*Philadelphia, PA 19107*
*(215) 546-7400*
*FAX (215) 985-0169*

Original File 12064MP1.V1, Pages 1-94

**Word Index included with this Min-U-Script®**

Page 9

[1] Q. Was it a joint ownership or was the house
[2] owned -- was it a joint ownership?
[3] A. Yes.
[4] Q. For how long did you own that home?
[5] A. About thirty years.
[6] Q. That takes me to 1999. Is that right?
[7] A. Somewhere around there.
[8] Q. Did you then sell the house?
[9] A. No.
[10] Q. What happened to your ownership in the
[11] house after approximately thirty years?
[12] A. We put it into a trust.
[13] Q. Okay. What trust?
[14] A. I believe they call it a granters reserve
[15] trust.
[16] Q. When did you do that?
[17] A. I would have to find that out for you.
[18] Q. How would you go about doing that?
[19] A. Go find the trust.
[20]    MR. HART: As we get through some of
[21] this, there could be a lot of
[22] intertwining of, like the trust and who
[23] it would go to and things along those
[24] lines. We would ask, if you don't mind,

Page 10

[1] can we agree to confidentiality for this
[2] transcript? At this point you just have
[3] facts, which are of no consequence.
[4]    MR. CASEY: Yes, we can talk about
[5] that maybe during a break. But I don't
[6] think there is going to be any problem
[7] with that. Can we just find out who,
[8] rather than having me ask a lot of
[9] questions about it, can you tell me who
[10] owned the house on the date of the
[11] drowning?
[12]    THE WITNESS: It was in trust.
[13] BY MR. CASEY:
[14] Q. Who was the trustee?
[15]    MR. HART: That you can answer.
[16] BY MR. CASEY:
[17] Q. Who was the trustee?
[18] A. Barbara Longwill.
[19] Q. Who is Barbara Longwill?
[20] A. My wife.
[21] Q. Do you have trust documents reflecting
[22] this conveyance from your ownership with your
[23] wife to the trust?
[24] A. Yes.

Page 11

[1]    MR. CASEY: Dan, do we have that
[2] document?
[3]    MR. HART: No.
[4]    MR. CASEY: Can I have them?
[5]    MR. HART: If you make a request.
[6]    MR. CASEY: I am making that request
[7] now.
[8]    MR. HART: I don't know if we have
[9] them here.
[10] BY MR. CASEY:
[11] Q. You told me that you owned the house for
[12] approximately thirty years. Can you tell me,
[13] with any more specificity, when that conveyance
[14] was made?
[15] A. I assume you will find that out when we
[16] get that document, and it will give a date of
[17] transfer.
[18] Q. Can you give me, sir, your own
[19] understanding as to the date of --
[20] A. I don't know.
[21] Q. You can't give me any more specific date
[22] other than approximately 1999?
[23] A. Somewheres around there, yes.
[24] Q. But from what you're telling me, I

Page 12

[1] understand that on the date of your
[2] granddaughter's death, you're confident that
[3] the trust owned your Coachman Road house?
[4] A. Correct.
[5] Q. For what reason did you make that
[6] conveyance from your individual ownership to
[7] the trust in the name of your wife?
[8]    MR. HART: I'm going to have to
[9] object because the scope of the
[10] deposition here is venue and
[11] jurisdiction, as far as his individual
[12] contacts with the Commonwealth of
[13] Pennsylvania. His motivation for
[14] forming the trust, I don't think, has
[15] anything to do with the issues here.
[16] BY MR. CASEY:
[17] Q. Were there any other entities, other than
[18] your wife, named as trustee?
[19] A. No.
[20] Q. Do you own any businesses today, sir?
[21] A. Personally?
[22] Q. Yes.
[23] A. No.
[24] Q. Do you, through any corporate or other

Page 13

[1] entity, own any businesses?
[2] A. Yes.
[3] Q. Please tell me about those?
[4]   MR. MINTZER: Object to the form.
[5] BY MR. CASEY:
[6] Q. You can answer the question.
[7]   MR. MINTZER: I mean, does he own or
[8] through any other entity --
[9]   MR. CASEY: I don't think you're
[10] representing, object to the form. He is
[11] answering the question.
[12]   MR. MINTZER: I object to the form
[13] and I'm objecting, I represent Air Base
[14] and that may be one of the interested
[15] issues in the case.
[16]   MR. CASEY: You can object to the
[17] form.
[18]   MR. MINTZER: I'm objecting to the
[19] form because any other entities is too
[20] vague at this stage.
[21]   MR. HART: Do you understand the
[22] question?
[23]   THE WITNESS: No.
[24] BY MR. CASEY:

Page 14

[1] Q. Do you own any other businesses, do you
[2] own any other businesses through any corporate
[3] or other affiliation of your own?
[4] A. Yes.
[5] Q. Please tell me about those?
[6]   MR. MINTZER: Objection.
[7]   MR. LESSNER: Objection.
[8]   MR. MINTZER: Objection. Does your
[9] question include as a point of fact in
[10] form, investments?
[11]   MR. CASEY: I think he can answer to
[12] the best of his understanding. You can
[13] preserve an objection, which is your
[14] right to do so. I would like the
[15] witness just to give me his best answer
[16] to the question. He seems to understand
[17] it.
[18]   THE WITNESS: I don't.
[19] BY MR. CASEY:
[20] Q. Do you own any businesses through a
[21] corporate affiliation?
[22] A. Yes.
[23] Q. Which ones?
[24] A. Which would be corporate affiliations.

Page 15

[1] Q. Okay. Which businesses do you have any
[2] ownership interest in?
[3]   MR. HART: That's a different
[4] question.
[5]   THE WITNESS: He wants to know --
[6] could you say that again?
[7] BY MR. CASEY:
[8] Q. Sure. Which businesses do you have an
[9] ownership interest in?
[10] A. I own a number of different carpet
[11] companies.
[12] Q. Which ones?
[13] A. Air Base Carpet Mart, Inc..
[14] Q. You can keep reading.
[15] A. Air Base Distributing, Inc..
[16] Q. Go ahead.
[17] A. I'm trying to think which ones there are.
[18] Q. How about Lancaster Carpet Mart, Inc.?
[19] A. Right.
[20] Q. How about Allentown Carpet Mart and
[21] Wallpaper Outlet, Inc.?
[22] A. I don't own that.
[23] Q. Who does?
[24] A. Nobody.

Page 16

[1] Q. Do you know who owns it?
[2] A. No.
[3] Q. Does it still exist?
[4] A. No.
[5] Q. When did it cease to exist, if it did?
[6] A. I don't know.
[7] Q. Do you recognize that entity?
[8] A. Yes.
[9] Q. What is it?
[10] A. It use to be a carpet concern that I
[11] owned.
[12] Q. When did you --
[13] A. I don't know. I don't remember when I
[14] got rid of it.
[15] Q. Approximately when?
[16] A. Way back, ten years ago or so.
[17] Q. To whom did you sell it?
[18] A. It just went out of business.
[19] Q. How about Reading Carpet Factory Outlet,
[20] Inc.?
[21] A. That still exist, I own that.
[22] Q. Yorktown Carpet Mart, Inc..
[23] A. Yes.
[24] Q. Do you own that?

Page 17

[1] A. Yes.
[2] Q. Lomax Home Center, Inc., do you own that?
[3] MR. MINTZER: Objection to the form,
[4] you went from investment to ownership.
[5] And that clearly is a violation of form,
[6] because you did that very smoothly,
[7] without changing the prior question. So
[8] I object to the form and the line.
[9] MR. CASEY: I assume what you're
[10] telling me is you object to the form.
[11] MR. HART: I think what the
[12] distinction is whether he has an
[13] ownership interest or --
[14] MR. CASEY: This man is answering
[15] his own questions. Please don't answer
[16] for him.
[17] MR. MINTZER: It's over an
[18] objection.
[19] MR. CASEY: Please let him answer
[20] the questions. I think we all know that
[21] that is proper. And he can answer the
[22] question as he sees fit. Now you're
[23] telling him he is not answering the
[24] question the way you want him to answer

Page 18

[1] it.
[2] **BY MR. CASEY:**
[3] Q. Sir, do you own Lomax Home Center, Inc.?
[4] MR. MINTZER: Objection.
[5] THE WITNESS: As an investment?
[6] **BY MR. CASEY:**
[7] Q. Do you have any ownership interest in
[8] Lomax Home Center, Inc.?
[9] A. Yes.
[10] Q. And that's located at 2940 Jasper Street
[11] in Philadelphia, Pennsylvania, correct?
[12] A. That's correct.
[13] Q. Would I be correct to say that one
[14] hundred percent of the stock of that company is
[15] owned by you?
[16] A. No.
[17] Q. What percentage of stock do you own?
[18] A. Fifty percent.
[19] Q. Who owns the rest of it?
[20] A. Michael Longwill.
[21] Q. Who is Michael Longwill?
[22] A. My son.
[23] Q. Did you, at any time, own one hundred
[24] percent of the stock of Lomax Home Center,

Page 19

[1] Inc.?
[2] A. Yes.
[3] Q. When, last, did you own one hundred
[4] percent of the stock?
[5] A. I would have to find that out for you.
[6] Q. Approximately when?
[7] A. Ten years ago.
[8] Q. Are you telling me that approximately ten
[9] years ago the condition whereby you owned one
[10] hundred percent of the stock changed to a
[11] condition whereby you owned fifty percent and
[12] your son owned fifty percent?
[13] A. Correct.
[14] Q. Are you, or have you ever been an officer
[15] or director of any of the companies that we
[16] just talked about?
[17] A. At one time.
[18] Q. Are you today?
[19] A. No.
[20] Q. Are you an officer or director of any
[21] company today?
[22] A. I'm chairman of the board.
[23] Q. Of what?
[24] A. Air Base Carpet Mart.

Page 20

[1] Q. For how long have you been chairman of
[2] the board of Air Base Carpet Mart?
[3] A. December of '99.
[4] Q. What percentage of stock of Air Base
[5] Carpet Mart do you own?
[6] A. Probably fifty percent.
[7] Q. For how long have you owned fifty percent
[8] of the stock of Air Base Carpet Mart?
[9] A. Since its inception.
[10] Q. When was that?
[11] A. 1969.
[12] Q. Have you ever been an officer or director
[13] of Lancaster Carpet Mart, Inc.?
[14] A. At one time.
[15] Q. When?
[16] A. Before December of '99.
[17] Q. I understand what you're telling me, sir,
[18] to mean that you ceased being an officer or
[19] director of Lancaster Carpet Mart, Inc. in
[20] December '99?
[21] A. Yes.
[22] Q. Would the same be true of Reading Carpet
[23] Factory Outlet, Inc.?
[24] A. Yes.

Page 41

[1] Inc.?
[2] MR. HART: Objection, that's beyond
[3] the scope of the notice, what those
[4] corporate entities have to do with him.
[5] MR. CASEY: Dan, I really, I think
[6] I'm entitled to ask questions that are
[7] reasonably calculated to lead to the
[8] discovery of the information that I'm
[9] entitled to get under the judge's order.
[10] And all I am interested in knowing who
[11] owns these companies and towards the end
[12] of establishing venue or/and
[13] jurisdictional contact. And I suggest
[14] to you that these are perfectly
[15] acceptable questions. And I don't want
[16] to bring him back but it seems to me
[17] that we are headed in that direction.
[18] MR. HART: Well, we've already
[19] discussed his ownership in those
[20] companies.
[21] BY MR. CASEY:
[22] Q. Who else owns the companies with you?
[23] A. Barbara Longwill.
[24] Q. And we're talking about Air Base Carpet

Page 42

[1] Mart, Inc.?
[2] A. Yes.
[3] Q. Who else?
[4] A. That's it.
[5] MR. HART: He said it's fifty/fifty.
[6] BY MR. CASEY:
[7] Q. So I assume from your answer that no
[8] corporate entity has any ownership interest in
[9] the Air Base Carpet Mart, Inc., is that
[10] correct?
[11] A. Can you rephrase that?
[12] Q. You told me --
[13] A. Are you saying that one corporation owns
[14] part of another corporation?
[15] Q. Yes, that's what I'm saying.
[16] A. No.
[17] Q. So no corporate entity has any ownership
[18] interest in Air Base Carpet Mart, Inc., is that
[19] correct?
[20] MR. HART: Objection, asked and
[21] answered.
[22] THE WITNESS: That's correct.
[23] BY MR. CASEY:
[24] Q. When did Lancaster Carpet Mart, Inc.

Page 43

[1] open?
[2] A. Carpet Mart, Inc. opened somewhere in
[3] the early '70s.
[4] Q. How about Reading Carpet Factory Outlet?
[5] A. I think probably '72.
[6] Q. How about Yorktown Carpet Mart?
[7] A. Mid '70s, I don't have specific dates for
[8] all this.
[9] Q. That's all I'm asking for is general time
[10] frames. Lomax?
[11] A. Probably in the '80s.
[12] Q. Did you sign any of the documents of
[13] incorporation for any of those businesses?
[14] A. Possibly.
[15] Q. Do you expect that you did, sir?
[16] A. Some of them were signed by my father,
[17] who's since deceased.
[18] Q. When did he die?
[19] A. Seven years ago.
[20] Q. But do you expect that you yourself
[21] signed any of them?
[22] A. I might have.
[23] Q. Lomax, I think you said started in the
[24] mid '80s?

Page 44

[1] A. Yes.
[2] Q. Do you expect that you signed any of the
[3] corporate documents for Lomax Home Center?
[4] A. I may have.
[5] Q. Who owns the buildings in which these
[6] businesses operate?
[7] A. I do, with my wife.
[8] Q. You do individually with your wife?
[9] MR. MINTZER: Objection.
[10] MR. HART: Objection to the form.
[11] MR. HART: The question is who owns
[12] them.
[13] THE WITNESS: R and B Real Estate.
[14] BY MR. CASEY:
[15] Q. What is R and B Real Estate?
[16] A. A Real Estate partnership.
[17] Q. Are you a partner of R and B Real Estate?
[18] A. Yes.
[19] Q. Does R and B stand for Richard and
[20] Barbara?
[21] A. Very good, yes, you're correct.
[22] Q. When did you start R and B Real Estate?
[23] A. Good question. I don't remember.
[24] Q. Can you give me an approximate date?