1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES H. GORBEY, JR.,           )
Administrator of the            )
Estate of Marissa Rose          )
Fishman, Deceased,              )
                                )
            Plaintiff,          )
                                ) C.A. No. 05-211 KAJ
v.                              ) JURY TRIAL DEMANDED
                                )
RICHARD LONGWILL, BARBARA       )
LONGWILL, AIR BASE CARPET       )
MART, INC., d/b/a Air Base      )
Distributing, Inc., d/b/a       )
Air Base Carpet Mart, AIR       )
BASE DISTRIBUTING, INC.,        )
ASHLAND CONSTRUCTION            )
COMPANY, INC., JOSEPH           )
RIZZO & SONS CONSTRUCTION       )
VINCENT RIZZO CONSTRUCTION      )
CO., INC., d/b/a Ashland        )
Construction Co., Inc.,         )
JOSEPH V. RIZZO, VINCENT        )
RIZZO,                          )
                                )
            Defendants.         )


     Deposition of ROCHELLE B. LONGWILL, taken
pursuant to notice at the law offices of Murphy,
Spadaro & Landon, 1011 Centre Road, Suite 210,
Wilmington, Delaware, beginning at 3:15 p.m. on
Tuesday, March 7, 2006, before Heather M.
Triozzi, Registered Professional Reporter,
Certified Shorthand Reporter, and Notary Public.

```
 1                    ROCHELLE B. LONGWILL,
 2              the deponent herein, having first
 3              been duly sworn on oath, was
 4              examined and testified as follows:
 5   BY MR. LANDON:
 6       Q.   Could you state your full name and current
 7   address, please?
 8       A.   Rochelle Beth Longwill.  Five Roan Court,
 9   Wilmington, Delaware 19803.
10       Q.   Are you now divorced from Eric Fishman?
11       A.   Yes.
12       Q.   Is he still employed by Air Base Carpet
13   Mart?
14       A.   No.
15       Q.   When did his employment there end?
16       A.   2003 sometime.
17       Q.   I take it this lawsuit was not your idea?
18       A.   You're right.
19       Q.   And I take it you completely disagree with
20   the fact that it's been filed?
21       A.   Yes.
22       Q.   Do you have any discussions -- have you
23   had any discussions at all with Eric Fishman
24   about the status of the suit or the reason for
```

1  sliding doors; right?
2      A.  Yes.
3      Q.  And you were here when your mother
4  testified that pretty much the same thing, that
5  it was the custom and habit for those doors
6  always to be shut?
7      A.  Yes.
8      Q.  You would agree with that?
9      A.  Yes.  Yes.
10     Q.  During the summer of 2002, there was an
11 incident with Eric.  As a result of that, you
12 ended up staying with your mother and your
13 parents?
14     A.  Yes.
15     Q.  How long had you been staying with your
16 parents prior to August 30 of '02, if you can
17 tell me?
18     A.  Twelve days.
19     Q.  Okay.  And when that incident happened,
20 did you take all -- what did you take with you to
21 your parents initially?
22     A.  We had bags that were packed for the
23 weekend when we went to Cape May.
24     Q.  Okay.

1    A.   I went home maybe to pick up another pair
2  of sneakers or something for the kids, just a
3  couple odds and ends that -- I wasn't planning on
4  staying for the next two years or Marissa dying.
5    Q.   I understand.  During that two weeks or a
6  little less than two weeks, did you ever go back
7  to your other residence to pick up anything?
8    A.   No.
9    Q.   During that period of 12 days, did you
10 have to go out and buy certain things for the
11 kids that you needed, but were at the other house
12 and you didn't want to go get them?
13   A.   I don't remember.
14   Q.   Prior to that Friday the 30th, you had
15 known Vinnie Rizzo before; right?
16   A.   Yes.
17   Q.   And I'm assuming you were familiar with
18 him because of the work that he had done on your
19 parents' property?
20   A.   Yes.
21   Q.   The other guy that was there on the 30th,
22 had you ever seen him before?
23   A.   No.
24   Q.   Were you on a friendly basis with Vinnie?