IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES H. GORBEY, JR., | \| |
| Administrator of the Estate of | \| |
| Marissa Rose Fishman, Deceased, | \| |
| | \| |
| Plaintiff, | \| |
| | \| |
| v. | \|    C.A. No. 05-211 KAJ |
| | \| |
| RICHARD LONGWILL, | \|    JURY TRIAL DEMANDED |
| BARBARA LONGWILL, | \| |
| AIR BASE CARPET MART, INC. | \| |
| d/b/a Air Base Distributing, Inc. d/b/a | \| |
| Air Base Carpet Mart, AIR BASE | \| |
| DISTRIBUTING, INC., ASHLAND | \| |
| CONSTRUCTION COMPANY, INC., | \| |
| JOSEPH RIZZO & SONS | \| |
| CONSTRUCTION, VINCENT RIZZO | \| |
| CONSTRUCTION CO., INC., | \| |
| d/b/a Ashland Construction Co., Inc., | \| |
| JOSEPH V. RIZZO, VINCENT RIZZO, | \| |
| | \| |
| Defendants. | \| |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS',
ASHLAND CONSTRUCTION COMPANY, INC., VINCENT RIZZO
CONSTRUCTION CO., INC., d/b/a ASHLAND CONSTRUCTION CO., INC.,
JOSEPH V. RIZZO, AND VINCENT RIZZO,
<u>MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY</u>**

MURPHY SPADARO & LANDON
ROGER D. LANDON (ID#: 2460)
CHASE T. BROCKSTEDT (ID#: 3815)
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for Defendants
Ashland Construction Company, Inc.,
Vincent Rizzo Construction Co., Inc. d/b/a
Ashland Construction Co., Inc.,
Joseph V. Rizzo, and Vincent Rizzo

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ...........................................1

SUMMARY OF ARGUMENT.....................................................................2

STATEMENT OF FACTS ...........................................................................3

ARGUMENT.................................................................................................10

I.      The Summary Judgment Standard.....................................................10

II.     The Ashland Defendants Owed No Duty to Decedent.........................11

      A.      Ashland's Area of Work .............................................................11

      B.      Delaware Requires Control........................................................12

      C.      The Ashland Defendants Are Not Liable ...................................13

III.    The Ashland Defendants Did Not Open or Fail to
        Close the Interior Sliding Glass Door.................................................15

IV.     No Evidence Set Forth Against Joseph V. Rizzo ……………………… 20

CONCLUSION.............................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).................................................. 10

<u>Brown v. Grabowski</u>, 922 F.2d 1097 (3d Cir. 1990), <u>cert. denied</u>, 501 U.S. 1218 ........ 10

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) .............................................................. 10

<u>Craig v. A.A.R. Realty Corp.</u>, 576 A.2d 688 (Del. Super. 1989).................................... 12

<u>Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.</u>,
     812 F.2d 141 (3d Cir. 1987) .................................................................................... 10

<u>Marcangelo v. Boardwalk Regency Corp.</u>, 847 F. Supp. 1222 (D.N.J. 1994) ............... 10

<u>Monroe Park Apartments Corp v. Bennett</u>, 232 A.2d 105, 108 (Del. 1967).................. 13

<u>Murphy v. Godwin</u>, 303 A.2d 688, 674 (Del. Super. 1973).......................................... 12

<u>O'Conner v. Diamond State Telephone Co.</u>, 503 A.2d 661, 663 (Del. Super. 1985)..... 12

<u>Rabar v. E.I. DuPont de Nemours & Co., Inc.</u>, 415 A.2d 499 (Del. Super. 1980)......... 12

<u>Statutes</u>

Fed. R. Civ. P. 56(c) ...................................................................................................... 10

## NATURE AND STAGE OF PROCEEDINGS

This lawsuit stems from the drowning death of Marissa Fishman, a twenty month old child, on August 30, 2002.  The case currently pending before this Court has its origin in two actions filed in the United States District Court for the Eastern District of Pennsylvania which were consolidated on December 1, 2004 and then transferred to this Court on March 4, 2005. See Orders at Ex. A.   The allegations against defendants are set forth in two documents known as the "Civil Action Complaint", Ex. B., and the "Fourth Amended Complaint", Ex. C.[1]

The plaintiff is James H. Gorbey, Jr., the Administrator of the Estate of Marissa Rose Fishman.  The defendants are Richard and Barbara Longwill (the "Longwill" defendants), Air Base Carpet Mart, Inc. d/b/a Air Base Distributing, Inc. d/b/a Air Base Carpet Mart, Air Base Distributing, Inc. (the "Air Base Carpet" defendants), Ashland Construction Company, Inc., Vincent Rizzo Construction Co., d/b/a Ashland Construction Co., Inc., Joseph V. Rizzo, and Vincent Rizzo (the "Ashland" defendants).[2]

The Ashland defendants asserted crossclaims and counterclaims against the Longwill defendants and the Air Base Carpet defendants.  This is the Ashland defendants' opening brief in support of their motion for summary judgment as to liability.

---

[1] The Fourth Amended Complaint was originally filed in the Court of Common Pleas, Philadelphia County.

[2] Joseph Rizzo and Sons Construction is an entity that was named as a defendant in the Civil Action Complaint.  That entity has no relation to this case.  Counsel has not entered an appearance nor answered on that entity's behalf.

## SUMMARY OF ARGUMENT

1.       The Ashland defendants owned no duty to Marissa Fishman as the incident occurred in an area outside of their control.  The area of work was an outside patio and control of the interior sliding glass door between the dining area and the pool enclosure belonged to one of the six adult occupants of the Longwill Residence on the day of the incident.  There are no genuine issues of material fact and summary judgment in favor of the Ashland defendants is warranted.

2.       There is no evidence in support of the allegation that the Ashland defendants opened the interior sliding glass door to the pool.  The uncontroverted evidence is that they did not open the door.  Moreover, none of the six adults inside the Longwill residence can account for Marissa Fishman's whereabouts for the 43-57 minutes prior to her being found in the pool. There are no genuine issues of material fact and summary judgment in favor of the Ashland defendants is warranted.

3.       There is no evidence to support any allegations against Joseph V. Rizzo individually.  There are no genuine issues of material fact and summary judgment in favor of Joseph V. Rizzo is warranted.

## STATEMENT OF FACTS

On Friday, August 30, 2002, at approximately 10:13 a.m., Marissa Rose Fishman, twenty months old, drowned after she entered an indoor pool at the residence of her grandparents, Richard and Barbara Longwill located at 3220 Coachman Road, Surrey Park, Wilmington Delaware (the "Longwill Residence").  See police report, Ex. D.  Family members attempted resuscitation at the scene and Marissa was ultimately taken to the A.I. DuPont Hospital for Children by paramedics.  Id.  Shortly thereafter, Marissa died.  See Death Certificate at Ex. E.

On the day of the incident, the following individuals were inside the Longwill Residence: Helen Longwill (the decedent's great grandmother); Barbara Longwill (the decedent's grandmother); Rochelle Longwill Fishman (the decedent's mother); Alexandra, Harrison and Samuel Fishman (the decedent's siblings); Debra Longwill (the decedent's aunt); Allison Lucas (the decedent's adult second cousin); and Theresa Zavala (Rochelle Fishman's nanny).  See police report, Ex. D.  Also at the Longwill Residence that day were Vincent Rizzo and Salvador Ortiz-Britto of Ashland Construction who were installing pavers on an outside patio.  Dep. tr. of Vincent Rizzo dated Dec. 30, 2004 at p. 11, Ex. F.

On August 30, 2002, the date of the incident, an investigation was performed by the New Castle County Police Department.  See police report, Ex. D.  Since that investigation, this action has been commenced by the Administrator of the Estate of Marissa Fishman and the parties have engaged in discovery.  Some of the facts learned during discovery, specifically with respect to the statements and actions of Barbara Longwill, differ from the investigative report.  Such discrepancies will be noted below.  Additionally, a diagram of the house and photographs of several areas of the home including the dining area, pool and enclosure, and an outside patio area are attached at Ex. G.

Marissa Fishman is the deceased child of Eric Fishman and Rochelle Longwill Fishman. Prior to the August 30, 2002, drowning, Mr. and Mrs. Fishman became separated and, approximately two weeks prior to the incident, Rochelle Fishman and her four children, had moved out of the residence she had been sharing with her husband and moved into the Longwill Residence. Dep. tr. of Rochelle Fishman dated Mar. 7, 2006 at pp. 28-29, Ex. H. Rochelle Fishman's mother, Barbara Longwill, employed Theresa Zavala as a nanny to help her daughter care for her children. Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at pp. 15-19, Ex. I. When Rochelle Fishman and her children moved into the Longwill Residence, Ms. Zavala moved in as well. Id. According to Ms. Zavala, she and Marissa woke up on the day of the incident at approximately 7:00 a.m. See police report, Ex. D. Shortly thereafter, Marissa and Ms. Zavala joined the other members of the family in the kitchen for breakfast. Id. At approximately 9:00 a.m., Ms. Zavala began cleaning Rochelle Fishman's and Barbara Longwill's bedrooms. Id. Ms. Zavala assumed all of the children, including Marissa, were being supervised. Id. Sometime later, when Ms. Zavala returned to the kitchen area, she was asked by Mrs. Longwill about the whereabouts of Marissa. Id. Moments later, Mrs. Zavala heard Alexandra Fishman scream that Marissa was in the pool. Id. Ms. Zavala observed Marissa floating in the pool and that Rochelle Fishman jumped into the pool, retrieved Marissa and that Mrs. Fishman and Mrs. Longwill began administering CPR. Id. Ms. Zavala recalled seeing two men in the pool area (later identified as Vincent Rizzo and Salvador Ortiz-Britto). Id. A call was placed to 911 and ultimately paramedics arrived. Id.

Rochelle Fishman testified that when she woke up, Marissa and Theresa were downstairs in the basement. Dep. tr. of Rochelle Fishman dated Mar. 7, 2006 at p. 9, Ex. H. Shortly thereafter, Rochelle and the rest of the family ate breakfast in the kitchen. Id. at p. 10. After

breakfast, Rochelle and her sister, Debra Longwill, went to the back area of the house where the bedrooms are located and stated that her mother, Barbara Longwill, remained in the kitchen. Id. at pp 13-14. Marissa did not go with her mother to the back of the house. Id. at p. 13. The police report identifies the incident occurring at 10:13 a.m., and Rochelle Fishman testified that time is consistent with her recollection. Id. at pp.19-20. Rochelle Fishman testified she could not identify the whereabouts of Marissa from approximately 9:30 a.m., when she believes she left the kitchen area following breakfast and, approximately 10:13 a.m., when she heard Alexandra Fishman scream that Marissa was in the pool. Id. at pp. 19-23. Rochelle Fishman did not know whether the sliding glass door from the dining area to the pool was opened or closed prior to the incident but recalls it being open when Alexandra found Marissa. Id. at 23. When Rochelle Fishman entered the pool area at approximately 10:13 a.m., she recalled Mr. Rizzo and Mr. Ortiz-Britto crouching down doing something. Id. at pp. 36-37. She testified she jumped into the pool to retrieve Marissa. Id. at p. 15.

On October 9, 2002, Barbara Longwill provided a written statement memorializing her recollection of the events which took place on August 30, 2002. Written Statement of Barbara Longwill dated Oct. 9, 2002, Ex. J. With respect to the facts relevant to this motion, Barbara Longwill stated that there are two interior sliding glass doors which lead to the pool enclosure; one from the master bedroom and one from the dining area adjacent to the kitchen. Id. She further stated that while at home, the sliding glass doors are always locked. Id. On the day of the incident, Barbara Longwill was preparing for a dinner party and was expecting approximately 27 guests. Id. Mrs. Longwill last recalls seeing Marissa in the kitchen and stated that her daughters, Rochelle Fishman and Debra Longwill, were in the bedroom areas of the Longwill Residence. Id. She stated that two workers (Mr. Rizzo and Mr. Ortiz-Britto), had

come to the Longwill Residence in the morning and were working on an outside patio.  Id.  In

her written statement, Mrs. Longwill stated that she does not recall who left the interior sliding

glass door between the dining area and the pool open.  Id.  She stated that Mr. Rizzo agreed to

help get a table from outside on the patio area and carry it inside of the house, through the dining

area, and into the pool enclosure.  Id.  She stated that she observed him do this and that after he

was done moving the table inside, she locked the interior sliding glass door between the dining

area and the pool enclosure.  Id.  Mrs. Longwill stated that after the door was closed and locked,

Mr. Rizzo offered to clean some plastic chairs and bring them in as well.  Id.  She stated that she

did not notice that the door between the dining area and the pool was open.  Id.  From the time

the family finished breakfast until the time Marissa was found, Mrs. Longwill assumed Marissa

was with her mother or other family members.  Id.

Some of Mrs. Longwill's deposition testimony differed from her written statement.  She

testified that she was up early cooking for 27 people for that evening's dinner.  Dep. tr. of

Barbara Longwill dated Mar. 7, 2006 at p. 27, Ex. I.  She testified that she opened the sliding

glass door between the dining area and the outside patio to ask Mr. Rizzo to clean off the table

and move it inside.  Id. at pp. 35-37.  She stated he was outside working on building a patio and

she asked him to do her a favor by bringing in the table.  Id.  She testified that Mr. Rizzo

followed her inside the house into the dining area and then into the pool enclosure and that she

showed Mr. Rizzo where she wanted the table.  Id. at p. 37.  She specifically testified she opened

the interior sliding glass door to the pool enclosure and showed Mr. Rizzo where she wanted the

table.  Id. at 37-38.  She then testified that after she showed him, she closed the door but did not

lock it.  Id. at pp. 38-39  Mrs. Longwill testified that Mr. Rizzo then went back outside to clean

the furniture.  Id.  She could not recall how long after the exchange with Mr. Rizzo that he

brought the table inside and was unsure as to whether it could have been 30-40 minutes later. <u>Id</u>. at pp. 40-42. Although Mrs. Longwill recalled the chairs being in the pool area based on her review of pictures, she could not recall if they were brought inside before or after the table. <u>Id</u>. at p. 43. After the exchange with Mr. Rizzo, in which she told him to bring in the table, Mrs. Longwill was working alone in the kitchen. <u>Id</u>. at p. 30. Mrs. Longwill testified that from about 9:15 until the time Marisa was found, approximately 10:13 a.m., she does not know the location of Marissa. <u>Id</u>. at p. 32. Mrs. Longwill testified that she did not know who opened the door to the pool, how long it had been open, or how long Marissa had been in the pool. <u>Id</u>. at pp. 55-65.

Vincent Rizzo is one of the owners of Ashland Construction Company and, on the date of the incident, he and Mr. Ortiz-Britto, an employee of Ashland, were installing pavers on an outside patio at the Longwill Residence. Dep. tr. of Vincent Rizzo dated Jan. 30, 2006 at pp. 20-23, Ex. K. His company was hired by John Manger, a construction manager for Air Base Carpets, an entity owned by Richard and Barbara Longwill. <u>Id</u>. at pp. 8-20. Although his work at the Longwill Residence on the day of the incident only consisted of installing pavers on an outside patio, Barbara Longwill asked if he and his employee would clean a table and bring it into the pool area in preparation for a party that evening. <u>Id</u>. at 37-38, 44-45. Mr. Rizzo testified that he followed Mrs. Longwill into the house, through the sliding glass door from the outside to the dining area, and then through a second sliding glass door from the dining area into the pool area. <u>Id</u>. After Mrs. Longwill showed him where to put the table, he and Mrs. Longwill exited the pool enclosure. He does not recall Mrs. Longwill closing the interior sliding glass door to the pool area. <u>Id</u>. Mr. Rizzo went to the patio where he and Mr. Ortiz-Britto spent approximately 30-45 minutes cleaning the table and chairs. <u>Id</u>. After completing the cleaning, the two men opened the sliding glass door from the outside of the house into the dining area and moved the

chairs and then the table into the pool area.  Id.  Mr. Rizzo specifically stated that the door from

the dining area to the pool was already open when he began moving the furniture inside the

Longwill Residence and that neither he nor Mr. Ortiz-Britto had to open it.  Id.  Mr. Rizzo

recalled that the plastic chairs which were cleaned and brought inside could easily be stacked and

carried in by one man.  Id. at pp. 100-102.  He testified that after the exterior door was opened,

he brought the chairs inside of the house and did not have to put the chairs down to open the

interior sliding glass door because it was already open.  Id.  He stated that after he walked into

the pool area and put down the chairs, he walked back outside to get the table.  Id.  He and Mr.

Ortiz-Britto carried the table into the pool area together.  The whole process of moving the chairs

and table took them about 30-40 seconds and he did not recall seeing or hearing any children.  Id.

Mr. Rizzo recalled that his hands were still on the table when he looked up and heard Rochelle

Fishman screaming.  Id. at pp. 59-60.

Salvador Ortiz-Britto also testified that he and Mr. Rizzo were working at the Longwill

Residence on an outside patio installing pavers.  Dep. tr. of Salvador Ortiz-Britto dated Feb. 23,

2006 at pp. 9-12, Ex. L.  Mr. Ortiz-Britto testified that Mr. Rizzo directed him to clean the table

and chairs and that they needed to bring them inside to the pool enclosure.  Id. at pp. 25-26.  He

also testified that when he and Mr. Rizzo went into the home from the outside, one of the

homeowners let them inside after they knocked on the door.  Id. at pp. 26-29, 49-51.  Mr. Ortiz-

Britto testified that he carried three chairs into the house and as he was moving them, he saw that

the door from the dining area to the pool was already open.  Id. at pp. 29-30 and 49-51.  He only

made one trip inside and testified that as he was carrying the furniture into the house, Mrs.

Longwill saw Marissa in the pool.  Id. at pp. 30-36.

Marissa Fishman's father, Eric Fishman, was not at the Longwill Residence the morning of the incident. At the time, he was working for Mr. Longwill at Airbase Carpet. Dep. tr. of Eric Fishman dated Apr. 5, 2006 at pp. 9-10, Ex. M. Mr. Fishman testified he and Rochelle Fishman were married in 1992 and separated in December of 2001. Id. at pp. 10 and 19. On the day of the incident, Mr. Fishman was working at Airbase Carpet and received a phone call from his then brother-in-law, Michael Longwill about the incident at the house. Id. at pp. 36-37. Richard Longwill became involved and ultimately drove Eric Fishman to the hospital. Id. at p. 37. During that drive, Mr. Fishman testified that Mr. Longwill said "I can't leave Barbara or Rochelle alone ever." Id. Mr. Fishman understood that to mean that Mr. Longwill did not trust Rochelle and her mother alone in the house with the children because of the swimming pool. Id. at pp.37-38 and 42-46. Upon arriving at the hospital, Rochelle Fishman apologized to her husband about what happened. Id. at p. 38. Mr. Fishman located the emergency room doctor who treated Marissa and upon asking him what happened, the doctor told him that Marissa had been in the pool for quite some time. Id. at pp. 38-39. Mr. Fishman never found out what happened to his daughter or how she got into the pool area. Id. at pp. 42-45. With respect to the pool itself and the sliding glass doors, Mr. Fishman testified that there were no "rules" and that the doors were not always closed and locked. Id. at pp. 47-50.

**ARGUMENT**

## I.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact, and the evidence is so one-sided that a party is entitled to judgment as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court will consider the pleadings, admissions on file and affidavits in making its determination.  FED. R. CIV. P. 56(c).

To be sure, the moving party initially bears the burden of showing that no genuine issues of material fact exist.  Celotex, 477 U.S. at 423; Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987).  If a properly supported motion shows no genuine issues of material fact, however, the burden shifts to the nonmoving party to prove the existence of genuine issues of material fact.  Anderson, 477 U.S. at 248.  Further, the nonmoving party cannot create a genuine issue for trial with bare assertions, conclusory allegations, vague statements or general denials.  See Celotex, 477 U.S. at 324.  See also Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222, 1226 (D.N.J. 1994).

## II.    THE ASHLAND DEFENDANTS OWED NO DUTY TO DECEDENT

Plaintiff alleges that the Ashland defendants' area of work included the enclosed pool at

the Longwill Residence and that Marissa drowned as a result of Ashland defendants' conduct as

follows:

1)    failing to take reasonable care to make the premises safe for the work
to be done;

2)    negligently exposing an infant to an unsupervised swimming pool;

3)    failing to conduct their work in a manner that gave due consideration
to the presence of young children;

4)    negligently leaving the door to the pool open, or, in the alternative,
failing to properly close it;

5)    Negligently creating an attractive nuisance and unreasonably
dangerous condition that exposed decedent to an increased risk of
physical harm; and

6)    failing to properly train their employees.

Civil Action Complaint ¶ 13, 16-20, Ex. B.

### A.    Ashland's Area of Work

According to Plaintiff, the Ashland defendants' liability is predicated on the fact that the

area of work which was to be performed by Ashland Construction and specifically, Vincent

Rizzo and Salvador Ortiz-Britto on the day of the incident, included the indoor swimming pool

enclosure at the Longwill Residence.  However, the facts elicited during the investigation and

discovery do not support Plaintiff's assertion.

Vincent Rizzo testified his company was hired by Air Base Carpet's Construction

Manager, John Manger.  Dep. tr. of Vincent Rizzo dated Jan. 30, 2006 at p. 14, Ex. K.  Mr.

Rizzo explained that his job during the time period which included the date of the incident was to

install pavers on an outside patio.  Id. at pp. 20-21.  When Mr. Rizzo came to work the morning

of August 30, 2002, he did not expect to be cleaning tables and chairs as the job he was hired and paid to do was build a patio.  Id. at p. 44.  He stated that Mrs. Longwill came outside to where he and Mr. Ortiz-Britto were working and told Mr. Rizzo she was having a party and asked if he could clean off a table for her and bring it inside to the pool area.  Id. at pp. 47-48.  Similarly, Mrs. Longwill wrote in her statement that Mr. Rizzo and Mr. Ortiz-Britto were working on an outside patio and that she asked him to bring a table into the pool enclosure from outside.  Written Statement of Barbara Longwill dated Oct. 9, 2002, Ex. J.  She confirmed this statement at her deposition and testified that Mr. Rizzo and his employee were working outside and she opened the sliding glass door to ask them to clean off the table and move it inside.  Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at pp. 35-39, Ex. I.

## B.    Delaware Requires Control

In order to prove a prima facie case of negligence, a plaintiff must establish that a defendant owed a duty and that some act by the defendant breached that duty and caused harm. Murphy v. Godwin, 303 A.2d 688, 674 (Del. Super. 1973).  Determining the existence of such a duty is a question of law for the Court to decide.  W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS §37, at 236 (5th ed. 1984); See O'Conner v. Diamond State Telephone Co., 503 A.2d 661, 663 (Del. Super. 1985).  To impose a duty on a defendant in a premises liability action, Delaware law requires a defendant to "control" the area in question.  See Rabar v. E.I. DuPont de Nemours & Co., Inc., 415 A.2d 499 (Del. Super. 1980) (requiring control to impose duty for workplace accidents); Craig v. A.A.R. Realty Corp., 576 A.2d 688 (Del. Super. 1989) (requiring control to impose duty on landowner (occupier)).  The Court in Rabar, a case determining the duties owed to the employee of a contractor, ruled that those who "control" a work area are best equipped to ensure the area is safe.  Rabar 415 A.2d at 504.  Similarly, the

Court in <u>Craig</u>, a wrongful death case against the nonpossesory landowner/landlord of a mall, ruled that Delaware law requires a finding of "actual control" to impose a duty upon a landowner/landlord.  <u>Craig</u> 576 A.2d at 695 (citing <u>Monroe Park Apartments Corp v. Bennett</u>, 232 A.2d 105, 108 (Del. 1967)).

### C.    <u>The Ashland Defendants Are Not Liable</u>

There is no evidence in the case pending before this Court that the Ashland defendants, and specifically Vincent Rizzo and Salvador Ortiz-Britto, had control over the interior sliding glass door connecting the dining area to the indoor pool at the Longwill Residence.  The uncontroverted facts are that Ashland was hired by John Manger, an employee of one of the Longwills' companies, to build an outside patio at the Longwill Residence and that on August 30, 2002 they were there to install pavers in connection with that work.  Dep. tr. Vincent Rizzo dated Jan. 30, 2006 at pp. 14-17, 19-23, 33, Ex. K; Dep. tr. of Salvador Ortiz-Britto dated Feb. 23, 2006 at p. 16, Ex. L.  Mrs. Longwill similarly testified that Mr. Rizzo was hired to build an outside patio and that on the date of the incident he and Mr. Ortiz-Britto were working outside.  Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at p. 35, Ex. I.  The only reason that Mr. Rizzo and Mr. Ortiz-Britto were inside of the Longwill Residence was because Mrs. Longwill asked Mr. Rizzo to do her a favor and clean a table that was outside in the area of the patio and bring it in for her.  Although Mrs. Longwill testified that Mr. Rizzo had been in her home before, she testified before he would enter, he would always ring the doorbell and be "proper."  <u>Id</u>. at 86.  Mr. Ortiz-Britto testified that when he and Mr. Rizzo brought the table and chairs into the house from the outside patio, they had to knock on the sliding glass door.  Dep. tr. of Salvador Ortiz-Britto dated Feb. 23, 2006 at p. 29, Ex. L.

The work area of Ashland Construction was outside of the Longwill Residence on a patio.  Mr. Rizzo entered the Longwill Residence at the request of Mrs. Longwill.  He was inside the Longwill Residence when Mrs. Longwill showed him where to put the patio furniture and inside again when he moved the furniture inside with Mr. Ortiz-Britto.  Mr. Ortiz-Britto was only inside the Longwill Residence when he helped Mr. Rizzo move the furniture inside.  The interior sliding glass door between the dining area and the pool was inside the house – not outside where the Ashland defendants were working.  The interior sliding glass door was not in an area "controlled" by Ashland Construction.  Rather, the interior sliding glass door connecting the dining area to the pool enclosure was an area controlled only by the family members present at the Longwill Residence on the day of the incident.  The Ashland defendants owed no duty to Marissa Fishman to make the interior of the Longwill Residence safe.  That duty was owed by one of the six adults present that morning.  There are no genuine issues of material fact and summary judgment is warranted.

**III.    THE ASHLAND DEFENDANTS DID NOT OPEN OR FAIL
<u>TO CLOSE THE INTERIOR SLIDING GLASS DOOR</u>**

Plaintiffs allege in their complaint that the Ashland defendants are liable for the drowning

death of Marissa Fishman because, among other things, they negligently left the interior sliding

glass door between the dining area and the pool enclosure open or, in the alternative, failed to

properly close it.  Civil Action Complaint ¶13, Ex. B.  Even if the Ashland defendants owed a

duty to Marissa Fishman, they are entitled to summary judgment because the facts viewed in a

light most favorable to the plaintiff and any reasonable inferences to be drawn from those facts

fail to establish a breach of the alleged duty.  The uncontroverted evidence is that the Ashland

defendants did not open the interior sliding glass door.  To the contrary, the evidence clearly

supports a finding that Mrs. Longwill or someone else inside the Longwill Residence, opened,

and left open, the door, and failed to supervise a twenty month old child for at least 43 minutes.

The following facts are uncontradicted:

- Barbara Longwill took Mr. Rizzo into the pool area to show him where to put a table – this occurred at least 40 minutes before Marissa Fishman's motionless body was discovered in the pool.  Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at pp. 35-37, Ex. I; Dept r. Vincent Rizzo dated Jan. 30, 2006 at pp. 37-38, Ex. K.

- Mr. Rizzo went back outside and he and Mr. Ortiz-Britto spent 30-40 minutes outside on the patio cleaning the table and chairs as a favor to Mrs. Longwill.  <u>Id</u>.

- During those 30-40 minutes, no adult in the Longwill Residence can account for Marissa Fishman's whereabouts – including her great-grandmother, grandmother, mother, aunt, cousin or nanny.  Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at p. 32, Ex. I.; Dep. tr. of Rochelle Fishman dated Mar. 7, 2006 at pp. 19-23, Ex. H.

- During those 30-40 minutes, Marissa's three older siblings (Alexandra, age 8; Harrison, age 6; and Samuel, age 4) were inside the Longwill Residence and were capable of opening the interior door to the pool.  <u>See</u> police report, Ex. D; Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at p. 81, Ex. I.

- When Mr. Rizzo and Mr. Ortiz-Britto brought the chairs and table into the house and into the pool area, the interior sliding glass door to the pool was already open. Dep. tr. of Vincent Rizzo dated Jan. 30, 2006 at pp. 37-39, 80-86, Ex. K; Dep. tr. Salvador Ortiz-Britto dated Feb. 23, 2006 at pp. 29-30, 49-51, Ex. L.

- It took Mr. Rizzo and Mr. Ortiz-Britto 30-40 seconds to bring in the chairs and table.  Id. at pp. 59-60.

-  Marissa Fishman's body was discovered floating face down in the pool as the table was being brought inside.  Id. at 38-39.

The questions that have not been definitively answered by the police investigation nor during the discovery phase of this lawsuit are:

- Who opened the door to the pool?

- When was that door opened?

- When did Marissa walk through it and drown in the pool?

These questions cannot be definitively answered from the record evidence developed in this case. However, to generally answer these questions for the purpose of arriving at a verdict, there are only two reasonable scenarios which can be inferred and neither scenario implicates the Ashland defendants as the culpable parties.

The two reasonable scenarios which can be inferred from the record evidence are as follows:

Scenario 1:

- Barbara Longwill opened the interior sliding glass door at approximately 9:30 am when she showed Mr. Rizzo where to put the table and then closed the door after she and Mr. Rizzo exited the pool.  During the 30-40 minutes it took Mr. Rizzo and Mr. Ortiz-Britto to clean the furniture outside on the patio, one of the nine occupants inside the Longwill Residence, other than Marissa, opened the door to the pool and sometime thereafter, before Mr. Rizzo and Mr. Ortiz-Britto brought the chairs and table inside, Marissa (unsupervised by anyone) walked through the door, into the pool enclosure, jumped or fell into the pool, and drowned.

Scenario 2:

- Barbara Longwill opened the interior sliding glass door when she showed Mr. Rizzo where to put the table and did not close the door as she and Mr. Rizzo left the pool enclosure. Sometime thereafter during the next 40 minutes or so, before Mr. Rizzo and Mr. Ortiz-Britto brought the chairs and table inside, Marissa, (unsupervised by anyone) walked through the door, into the pool enclosure, jumped or fell into the pool, and drowned.

Scenario two implicates Barbara Longwill. Although she testified at her deposition that she closed the door after showing Mr. Rizzo where to put the table, her prior inconsistent written statement provides sufficient fodder for cross-examination for the jury to conclude her recollection of the events might be faulty. In that statement, she claimed she showed Mr. Rizzo where to put the table, then watched him bring the table into the pool enclosure, and then locked the door behind him after he left. Written statement of Barbara Longwill dated Oct. 9, 2002, Ex. J. During her deposition, she had no recollection of seeing Mr. Rizzo bring the table inside and she said she closed, but did not lock, the door after she and Mr. Rizzo left the pool area. Dep. tr. of Barbara Longwill dated Mar. 7, 2006 at pp. 37-39, Ex. I. Mr. Rizzo, on the other hand, testified he does not recall Mrs. Longwill closing the pool door when they left the pool and he did not bring the table inside until about 40 minutes later. Dep. tr. of Vincent Rizzo dated Jan. 30, 2006 at pp. 37-39, 80-86, Ex. K. The jury could reasonably conclude that Mrs. Longwill asked Mr. Rizzo to bring the table into the pool – assumed he was going to do it right away – and walked back to the kitchen without closing the door because she thought he was going outside right away to bring the table inside. Once she got to the kitchen, she got busy and did not think about the door being open because she may have assumed Mr. Rizzo would have closed it after bringing the table inside and, in any event, she assumed Marissa was being watched by one of the other adults in the house.

00130682.DOC                                      17

The only possible scenario one could conjure that would arguably implicate the Ashland defendants is one which lies outside the bounds of reasonable inference. The plaintiff may argue that the evidence supports the notion that Marissa Fishman somehow got into the pool enclosure during the period of time Mr. Rizzo and Mr. Ortiz-Britto were moving the furniture into the pool area. Such an argument would fail for several reasons. First and foremost, the uncontradicted evidence is that the pool door was already open when the two men brought the chairs and table inside. Dep. tr. Vincent Rizzo dated Jan. 30, 2006 at pp. 37-39, 80-86, Ex. K; Dep. tr. Salvador Ortiz-Britto dated Feb. 23, 2006 at pp. 29-30, 49-51, Ex. L. However, even if the plaintiff were to somehow convince the jury that Mr. Rizzo had to open the door to get the chairs and table inside, it defies logic and reason that during the 30 to 40 seconds it took him to walk back out to the patio (after putting the chairs inside) and move the table inside that Marissa managed to slip by them unseen into the pool enclosure and drown. Plaintiff's own expert has opined that Marissa would have struggled for one to two minutes trying to get to the surface while she was drowning. Report of Ian C. Hood dated Jan. 24, 2006, Ex. N. There was simply not enough time for her to have gotten into the pool and drown without being noticed.

None of the individuals inside the Longwill Residence on the day of the incident are able to account for Marissa Fishman for a minimum of 43 minutes – from 9:30 a.m., the last time she was seen by Rochelle Fishman and when she was found at 10:13 a.m. Mrs. Longwill, the only individual working in the kitchen area, cannot account for Marissa for a period of 57 minutes, beginning at 9:15 a.m. This evidence supports a finding that the door was open for a substantial amount of time during which Marissa was unsupervised and that she got into the pool area before the furniture was brought inside. This is bolstered by the fact that Mr. Rizzo was bringing the table inside at the time she was found and is further evidenced by the comments made by the

emergency room doctor to Mr. Fishman that it appeared Marissa had been in the pool for some time.

The undisputed facts are that the Ashland defendants did not open or close the interior sliding glass door. There is no direct evidence that supports a conclusion that the Ashland defendants did anything wrong. Rather, the evidence clearly suggests that not one of the six adults inside of the Longwill Residence was properly supervising Marissa Fishman and during that time – some 43-57 minutes – she somehow got into the pool and drowned. Taking the facts in a light most favorable to the plaintiff, there is no evidence supporting a finding of liability against the Ashland defendants. There are no genuine issues of material fact and summary judgment is warranted.

## IV.  <u>NO EVIDENCE SET FORTH AGAINST JOSEPH V. RIZZO</u>

There has been no evidence developed which could potentially lead to any liability against Joseph V. Rizzo individually.  It is undisputed that both Joseph V. Rizzo and Vincent Rizzo owned Ashland Construction at the time of the incident.  However, Joseph V. Rizzo has no individual involvement in this matter and there is no evidence to support a finding against him.  There are no genuine issues of material fact and summary judgment is warranted.

## **CONCLUSION**

The Ashland defendants should not be held liable for the drowning death of Marissa Fishman.  To impose such liability, plaintiff is required to prove that the Ashland defendants owed a duty to Marissa.  To prove duty, the plaintiff must prove the incident happened in an area controlled by Ashland.  The area of work for Ashland was on an outside patio and not the interior of the home.  The area controlled by Ashland does not include the interior sliding glass door to the pool.  Moreover, there is no factual evidence which supports plaintiff's theory that Ashland caused this accident by opening, or leaving open, the interior sliding glass door.  It is undisputed that none of the six adult family members occupying the home are able to account for Marissa Fishman's whereabouts for a period of at least 43 minutes before she was discovered face down and motionless in the pool.  Furthermore, no evidence has been set forth against Joseph V. Rizzo individually.  There are no issues of material fact and summary judgment in favor of the Ashland defendants as to liability is warranted.  For the reasons set forth above, defendants, Ashland Construction Company, Inc., Vincent Rizzo Construction Co., Inc., d/b/a Ashland Construction Co., Inc., Joseph Rizzo, and Vincent Rizzo, respectfully request the entry of summary judgment in their favor and against Plaintiff and all Co-Defendants.

Respectfully submitted,

MURPHY SPADARO & LANDON


/s/ Chase T. Brockstedt
Roger D. Landon (ID #: 2460)
Chase T. Brockstedt (ID #: 3815)
1011 Centre Road, Suite 210
Wilmington, DE 19805

Attorneys for Defendants
Ashland Construction Company, Inc.,
Vincent Rizzo Construction Co., Inc. d/b/a
Ashland Construction Co., Inc.,
April 28, 2006                Joseph V. Rizzo, and Vincent Rizzo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES H. GORBEY, JR.,                    |
Administrator of the Estate of           |
Marissa Rose Fishman, Deceased,          |
                                         |
          Plaintiff,                     |
                                         |
v.                                       |        C.A. No. 05-211 KAJ
                                         |
RICHARD LONGWILL,                        |        JURY TRIAL DEMANDED
BARBARA LONGWILL,                        |
AIR BASE CARPET MART, INC.               |
d/b/a Air Base Distributing, Inc. d/b/a  |
Air Base Carpet Mart, AIR BASE           |
DISTRIBUTING, INC., ASHLAND              |
CONSTRUCTION COMPANY, INC.,              |
JOSEPH RIZZO & SONS                      |
CONSTRUCTION, VINCENT RIZZO              |
CONSTRUCTION CO., INC.,                  |
d/b/a Ashland Construction Co., Inc.,    |
JOSEPH V. RIZZO, VINCENT RIZZO,          |
                                         |
          Defendants.                    |

## CERTIFICATE OF SERVICE

I, Chase T. Brockstedt, Esq., do hereby certify that on this 28th day of April, 2006, two

copies of the foregoing OPENING BRIEF IN SUPPORT OF DEFENDANTS', ASHLAND

CONSTRUCTION COMPANY, INC., VINCENT RIZZO CONSTRUCTION CO., INC., d/b/a

ASHLAND CONSTRUCTION CO., INC., JOSEPH RIZZO, AND VINCENT RIZZO,

MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY were e-filed and delivered in the

manner indicated to the following individual(s):

**Via First Class Mail**
Matthew Casey, Esq.
Kline & Specter
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA  19102

**Via First Class Mail**
Edward C. Mintzer, Jr., Esq.
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Philadelphia, PA  19107

00130682.DOC

**Via First Class Mail**
Benjamin C. Wetzel, III, Esq.
Wetzel & Associates, P.A.
1100 N. Grant Avenue, #201
Wilmington, DE  19805

**Via Hand Delivery**
William J. Cattie, III, Esq.
Rawle & Henderson LLP
300 Delaware Avenue, #1015
Wilmington, DE  19801

**Via Hand Delivery**
Kevin J. Connors, Esq.
Marshall Dennehey Warner Coleman & Goggin
1220 N. Market Street, 5th Floor
Wilmington, DE  19801

**Via First Class Mail**
Daniel Hart, Esq.
Marshall Dennehey Warner Coleman & Goggin
1845 Walnut Street
Philadelphia, PA  19103

MURPHY SPADARO & LANDON

 _/s/ Chase T. Brockstedt_____
ROGER D. LANDON (ID #: 2460)
CHASE T. BROCKSTEDT (ID #: 3815)
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for Defendants
Ashland Construction Company, Inc.,
Vincent Rizzo Construction Co., Inc. d/b/a
Ashland Construction Co., Inc.,
Joseph V. Rizzo, and Vincent Rizzo

00130682.DOC