IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

— — —

| | | |
|---|---|---|
| JAMES H. GORBEY, JR., | : | CIVIL ACTION |
| Administrator of the | | |
| ESTATE of MARISSA ROSE | : | NO. 04-4098 |
| FISHMAN, Deceased | | |
| | : | |
| -vs- | | |
| | : | |
| RICHARD LONGWELL | | |
| | : | |

— — —

| | | |
|---|---|---|
| JAMES H. GORBEY, JR., | : | CIVIL ACTION |
| Administrator of the | | |
| ESTATE of MARISSA ROSE | : | NO.  04-4118 |
| Deceased | | |
| | : | |
| -vs- | | |
| | : | |
| ASHLAND CONSTRUCTION | | |
| COMPANY, INC., et al | : | |

— — —

Oral deposition of JAMES H. GORBEY,
JR., ESQUIRE, taken on behalf of the Defendant,
Richard Longwell, in the Law Offices of MURPHY,
SPADARO & LANDON, 1011 Centre Road, Wilmington,
Delaware, on Wednesday, April 5, 2006, commencing
at or about 1:10 p.m., before Colleen A. Young,
Court Reporter - Notary Public.

— — —

B & R SERVICES FOR PROFESSIONALS, INC.
235 SOUTH 13th STREET
PHILADELPHIA, PENNSYLVANIA 19107
(215) 546-7400
B&R Services for Professionals, Inc.

JAMES H. GORBEY, JR., ESQUIRE                    27

1          funeral expenses, including the burial and the

2          tombstone, and the flowers, the church, or

3          whatever.  There would be the stone inscription

4          of the stone.  All the little things that you

5          make sure people are taking care of.

6                      And then you have, quite frankly,

7          my bill.  You know, my job is to say this is what

8          I've done.  And when I say I have to be flexible,

9          again, it depends on the size of the estate.  If

10         I have a very small estate and I have all sorts

11         of time in it, but there are heirs, the judge may

12         not give me all the money I want.  If there is a

13         big estate then there is a formula.

14                      For instance, if you get into a

15         million dollar estate, there is a case in

16         Pennsylvania that lawyers who do this work rely

17         on called the Johnson Estate.  And it sets forth

18         how you're paid.  It basically says you've got

19         seven percent, I think on the first hundred, and

20         six percent on the next 50, and five percent, and

21         then you get to that point where you are at three

22         percent on the rest.  And I think that's

23         somewhere around $250,000.  That's how you're

24         paid.  Always subject to court approval.

JAMES H. GORBEY, JR., ESQUIRE                28

1              Now, with respect to the litigation

2       lawyers, you know, the court that does their

3       litigation takes care of that.

4       Q.     Am I to understand that in a case like this

5       where we have a deceased child, after the payment

6       of the fees and the various attorneys involved,

7       and the costs that you described, under the

8       testacy statute that money, the money that is

9       left over, would be divided among existing or

10      living relatives?  According to our statute?

11      A.     Parents first.

12      Q.     Parents first.

13      A.     Parents can renounce their right to receive

14      it in favor of someone else.  It's not like they

15      don't have any choice about it.

16      Q.     You mentioned earlier a 50/50 split between

17      the parents.  Would that be standard?

18      A.     Pretty standard, yes.  There can be

19      exceptions, if there are child support issues

20      unpaid.  I've never had this one, but I mean

21      there are questions of abandonment, but in this

22      case I don't think so.

23              I told you I do a lot of domestic

24      relations work, so I've seen the parties in

                B&R Services for Professionals, Inc.

1      that.

2      Q.    When you're hired -- and your duty as the

3      administrator of the estate at that point is to

4      administer the estate and determine whether there

5      are assets, to determine whether there are

6      liabilities, and perform the functions that an

7      administrator is suppose to perform by law?

8      A.    Irrespective of the feelings of family

9      members.

10     Q.    Okay.

11     A.    Correct.

12     Q.    So it wouldn't matter whether mom or dad

13     wanted you to do anything in particular in terms

14     of filing a lawsuit, they don't have the power to

15     tell you what to do, correct?

16     A.    I think that the only thing that they can

17     do is petition to remove me, and that would

18     probably be spurious under the circumstances

19     today.  Or wait until after the litigation to see

20     if there is an asset and then object to the

21     proposed distribution that I would make.

22            In other words, going back to the

23     audit process, when everything is over, you

24     finished your advertising, there are forms that

1    you fill out for the orphans court, they're easy

2    for the Delaware lawyers to look at, they're in

3    our rule book.  You fill out that form, you list

4    it with the orphans court, you send notice out to

5    the heirs, and they have plenty of time to object

6    to whatever you are saying.  And even if they

7    don't file written objections, they can show up

8    in court and object, and the court will then set

9    a date for either a conference, or a mediation,

10   or trial, or all of the above.

11   Q.    I'm just trying to figure out, make sure I

12   am clear on your both legal and ethical

13   obligations as the administrator of the estate,

14   which all of those obligations run to the estate?

15   A.    That's correct.

16   Q.    Okay.  So all decisions that you make with

17   respect to pursuing or not pursuing litigation

18   are decisions that you make on behalf of the

19   estate, and in your view are in the best

20   interests of the estate?

21   A.    That's correct.

22   Q.    Okay.

23   A.    I am aware.  You know, I sign pleadings,

24   so...

JAMES H. GORBEY, JR., ESQUIRE                    38

1      Q.     And --

2      A.     But I wasn't aware of that when I was

3      appointed.

4      Q.     In this case, you as the administrator of

5      the estate are the client of Kline & Specter?

6      A.     Yes.

7      Q.     And you as the administer of the estate,

8      were there to be, hypothetically, a settlement

9      offer, would have to make the ultimate decision

10     as to whether to accept or reject that offer on

11     behalf of the estate?

12     A.     I don't know what your procedure is in

13     Delaware.  In Pennsylvania I would say it's a

14     qualified yes.  I would have to make the initial

15     decision that that was an appropriate offer, and

16     then we would petition the court for court

17     approval.  At that point, the parents could come

18     in and object if they didn't like the offer.

19     Q.     How does that -- how quickly does that

20     procedure proceed, in your experience?

21     A.     Well, in Delaware County, I've seen it done

22     two ways, and in Philadelphia County I've seen it

23     done two ways, Chester County.  You can say what

24     you do mean, two ways.

                B&R Services for Professionals, Inc.

JAMES H. GORBEY, JR., ESQUIRE                44

1      in my firm, and he was my father's law clerk

2      before he was the orphans law clerk, and he is in

3      my building.

4                      I am just saying I do this every

5      day.  And the judge tries to get his clerks to

6      hammer out a settlement.  If that doesn't work

7      you get a real trial.  Not a jury trial, but you

8      get a real hearing.

9      Q.    Has Rochelle Fishman renounced her right to

10     receive any share of the estate that might exist

11     at the end of the day?

12     A.    I have not received -- as of the time we're

13     speaking I have not received any such

14     renunciation or anything like that, whether it's

15     called -- no matter what it is called.

16     Q.    Nor has -- I take it, nor has Eric Fishman?

17     A.    I have had no direct communications, to my

18     knowledge, with either of them.

19     Q.    Talking about the fees that you're entitled

20     to collect as the administrator in a large

21     estate, if -- I want to make sure I understand

22     that.

23                     Let's just say for the sake of

24     argument you got --