```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF DELAWARE
                       - - -

JAMES H. GORBEY, JR.,      :   CIVIL ACTION
Administrator of the
ESTATE of MARISSA ROSE     :   NO. 04-4098
FISHMAN, Deceased
                           :

-vs-
                           :

RICHARD LONGWELL
                           :

                       - - -

JAMES H. GORBEY, JR.,      :   CIVIL ACTION
Administrator of the
ESTATE of MARISSA ROSE     :   NO.  04-4118
Deceased
                           :

-vs-
                           :

ASHLAND CONSTRUCTION
COMPANY, INC., et al       :

                       - - -
```

Oral deposition of ERIC C. FISHMAN, taken on behalf of the Defendant, Richard Longwell, in the Law Offices of MURPHY, SPADARO & LANDON, 1011 Centre Road, Wilmington, Delaware, on Wednesday, April 5, 2006, commencing at or about 2:15 p.m., before Colleen A. Young, Court Reporter - Notary Public.

                       - - -

```
        B & R SERVICES FOR PROFESSIONALS, INC.
                 235 SOUTH 13th STREET
           PHILADELPHIA, PENNSYLVANIA 19107
                    (215) 546-7400
            B&R Services for Professionals, Inc.
```

```
 1    that.
 2    Q.    Why did you contact Kline & Specter?
 3    A.    For the death of my daughter Marissa Rose.
 4    Q.    Did you consult with your wife at the time,
 5    Rochelle, in the course of contacting Kline &
 6    Specter about that matter?
 7    A.    Contacted my...
 8    Q.    Did you discuss it with your wife, the fact
 9    that you were contacting Kline & Specter at that
10    time?
11    A.    No.
12    Q.    Was she involved at all in dealing with
13    Kline & Specter?
14    A.    None.
15    Q.    When you contacted Kline & Specter, did you
16    go there and meet with someone?
17    A.    I did.
18    Q.    Do you remember who that was?
19    A.    Tom Kline.  And also Diane Hockstein, Rob
20    Ross.  I think that was it.  Yeah, that was it.
21    Q.    What was the substance of your discussion
22    with them at that time?
23              MR. VAN NAARDEN:  I object.  For
24          purposes of this deposition I don't know --
```

```
 1          well, we represent the estate at this time.
 2          There may have been some relationship between
 3          Eric Fishman and our firm prior to the
 4          appointment of the administrator of the
 5          estate, and I will assert a privilege if
 6          there are any type of attorney/client
 7          relationship at that time.  So I don't think
 8          it's appropriate for him to testify about any
 9          contact he had with our firm relating to the
10          claim of his or potential claim for his
11          deceased daughter.
12     BY MR. MAKARA:
13     Q.   Is it your understanding, Mr. Fishman, that
14     you were represented by Kline & Specter at some
15     point?
16     A.   Yes.
17     Q.   Okay.  To the extent that I'm going to ask
18     you questions today about this claim by the
19     Estate of Marissa Rose Fishman, would you be
20     willing to waive any potential attorney/client
21     privilege between you and Kline & Specter?
22          MR. VAN NAARDEN:  Again, we don't
23          represent Mr. Fishman for purposes of this
24          deposition, but, the attorney/client
```

1   privilege would not terminate, or any
2   discussions that we had or did not have with
3   Mr. Fishman at that time wouldn't terminate
4   upon our being appointed as counsel for the
5   estate. So I would instruct him not to
6   answer.
7           MR. MAKARA: Agreed. But he certainly
8   can waive the privilege if he so chooses, and
9   I don't think you can instruct him to answer.
10  In any case, it's up to you, Mr. Fishman.
11          THE WITNESS: I would rather not.
12          MR. LANDON: If I can have a
13  clarification. I understand that you're not
14  representing Mr. Fishman for purposes of the
15  deposition today. Is your firm currently
16  representing Mr. Fishman for any purposes?
17          MR. VAN NAARDEN: No.
18  BY MR. MAKARA:
19  Q.  Mr. Fishman, if you just look at the
20  documents that I handed you. Turning to the
21  second page, that document appears to be signed
22  by Thomas R. Kline, Esquire, and I think if I'm
23  reading it correctly it is dated January 11th of
24  2003.

1              Is that your understanding of when
2    this document would have been prepared?
3    A.   I guess you would be correct. I'm not sure
4    of the exact -- whether that's a seven or a one.
5    I'm not sure.
6    Q.   Whatever it is, it is.
7    A.   Yeah.
8    Q.   If you would turn to the fourth page. The
9    title of that document is Petition of Probate
10   Estate and Fiduciaries Code to Grant Letters of
11   Administration. Do you see that?
12   A.   I do.
13   Q.   What was your understanding of the purpose
14   of this document being filed?
15   A.   Do I need to...
16   Q.   I'm not asking you about anything that your
17   attorney told you, I just want your understanding
18   of why this document was being filed in Delaware
19   County?
20   A.   It's being filed in Delaware County because
21   that's where the -- where myself and my ex-wife
22   resided in Delaware County.
23   Q.   But do you know what this document was
24   asking for? What was its purpose in being filed

1     with the court?
2     A.    I guess it's to grant the letters of
3     administration.
4     Q.    With you as the administrator, correct?
5     A.    Correct.
6     Q.    If you go to paragraph five of that
7     document it says, Petitioner, Eric C. Fishman,
8     seeks to open the estate of his deceased
9     daughter, Marissa Rose Fishman, for the purposes
10    of initiating a civil action and/or conducting an
11    investigation regarding the death of Marissa Rose
12    Fishman which occurred on August 30th, 2002,
13    while she was in the custody and control of her
14    natural mother, Rochelle Fishman, and/or
15    grandparents, Barbara and Richard Longwell at the
16    Longwell residence.
17          Do you see that?
18    A.    I do see that.
19    Q.    Did you have an opportunity to review this
20    document before it was filed by your attorneys?
21    A.    I did.
22    Q.    And if you skip to the next to the last, or
23    third from the last page there, your name appears
24    in what appears to be a signature. Is that your

1   signature on this document?
2   A.   That's my signature.
3   Q.   And you did sign this document before it
4   was filed by your attorney at that time?
5   A.   Yes.
6   Q.   What I just said that is set forth in
7   paragraph five, is that true and accurate as far
8   as you are concerned?
9   A.   It is.
10  Q.   Can you tell me why it was that you thought
11  that an investigation regarding the death of
12  Marissa Rose Fishman should be conducted?
13  A.   Considering that I was at work, Airbase
14  Carpet Mart, and Marissa Rose, who was at the
15  grandparents' home, and nobody has ever come to
16  me to tell me what actually happened in that
17  house.
18  Q.   Did you ever discuss what happened with
19  your wife?
20  A.   Absolutely not.  They would never -- nobody
21  has discussed, communicated, or in any fashion,
22  my ex-wife, or my ex in-laws, or anybody else
23  that was in that house.
24  Q.   So you've never discussed the circumstances

| | | |
|---|---|---|
| 1 | | with Richard Longwell either? |
| 2 | A. | My ex-father-in-law. |
| 3 | Q. | Or Barbara Longwell? |
| 4 | A. | Correct. |
| 5 | Q. | And that's at any time since the accident |
| 6 | | happened? |
| 7 | A. | Absolutely. |
| 8 | Q. | Did you ever discuss with either your wife, |
| 9 | | or Barbara or Richard Longwell, the prospect or |
| 10 | | the idea of filing a lawsuit based upon the |
| 11 | | accident? |
| 12 | A. | Absolutely not. |
| 13 | Q. | Did you believe at the time of the filing |
| 14 | | of this document that you should be appointed as |
| 15 | | the administrator of the Estate of Marissa Rose |
| 16 | | Fishman as opposed to your wife Rochelle? |
| 17 | A. | I did. |
| 18 | Q. | Why? |
| 19 | A. | I felt that being the father I was entitled |
| 20 | | to that. |
| 21 | Q. | Is there any reason that you didn't think |
| 22 | | that your wife should be the administrator of the |
| 23 | | estate? |
| 24 | A. | I did not. |

1    Q.    You did not think that?

2    A.    No, no, no.  I thought not.

3    Q.    Why didn't you think she should be the

4    administrator?

5    A.    I just decided that I should be.

6    Q.    Now, if you skip down to paragraph 12 of

7    that document, that says, Eric C. Fishman,

8    natural father of Marissa Rose Fishman, deceased,

9    requests he be appointed Administrator of the

10   Estate of Marissa Rose Fishman, deceased, so that

11   he may, amongst other things, retain counsel to

12   investigate the death of Marissa Rose Fishman,

13   and institute a lawsuit against any and all

14   parties responsible for the injuries to and death

15   of Marissa Rose Fishman, deceased.

16         Is that true and accurate?

17   A.    That's true.

18   Q.    Why was it that you thought it would be

19   necessary to instrument a lawsuit at the time

20   this document was filed?

21   A.    I lost my child at that house, and was

22   never -- nobody has ever come forward to tell me

23   anything about it.  I felt that was my obligation

24   to my daughter.

1   Q.   Did you believe that someone was at fault
2   in the course of that accident?
3   A.   I would presume so. Absolutely.
4   Q.   Why?
5   A.   Considering there was, I'm going to
6   estimate, there was 14 people in that house, and
7   there were 14 responsible adults in that house
8   there was only one child, 20 months.
9   Q.   Did you ever have any type of court hearing
10  or appearance after the time that this petition
11  was filed?
12  A.   A court appearance?
13          MR. VAN NAARDEN: You mean as it
14      relates to the appointment of the
15      administrator?
16          MR. MAKARA: Right. Based upon this
17      petition.
18          THE WITNESS: I haven't appeared in
19      court on any other situation other than with
20      Matt Casey to -- within Delaware County with
21      Mr. Gorbey, I guess being...
22  BY MR. MAKARA:
23  Q.   Let me phrase it to you this way. This
24  petition -- from what we just read, this petition

1    is asking the court to appoint you as the
2    administrator of the estate, correct?
3    A.    Correct.
4    Q.    Did that ever happen?
5    A.    It did.
6    Q.    You were appointed the administrator of the
7    estate?
8    A.    I think Mr. -- maybe I'm getting confused.
9    I think Mr. Gorbey was appointed administrator of
10   the estate.
11   Q.    Okay.
12   A.    That's...
13   Q.    Do you have any understanding as to why you
14   were not appointed administrator of the estate?
15   In other words, this petition was not granted by
16   the court.
17   A.    Right.
18   Q.    Do you know why?
19   A.    I believe because neither myself or my
20   wife, that Mr. Gorbey had to be appointed.
21   Q.    And you did go to court at some point to
22   discuss that, or present that to a judge, there
23   was some type of court appearance?
24   A.    There was.

1   Q.   And you were present at that time?

2   A.   I don't know if I was present. I'm not

3   sure. I'm not sure.

4   Q.   Do you know, as you sit here today, whether

5   your wife, your ex-wife, agreed with the idea of

6   filing a lawsuit on behalf of the Estate of

7   Marissa Rose Fishman?

8   A.   Whether he agreed?

9   Q.   Yes.

10  A.   I haven't had any correspondence.

11  Q.   So you wouldn't know one way or the other?

12  A.   I haven't had any correspondence.

13  Q.   Did you ever discuss the filing of a

14  lawsuit on behalf of Marissa, your daughter, with

15  Mr. Gorbey?

16  A.   Personally with Mr. Gorbey?

17  Q.   Yes.

18  A.   No, I haven't spoken to Mr. Gorbey.

19  Q.   Did you ever discuss the filing of a

20  lawsuit on behalf of Marissa with anyone at Kline

21  & Specter?

22           MR. VAN NAARDEN: Again, I object.

23       To the extent that it calls for privileged

24       information during a limited time period when

         B&R Services for Professionals, Inc.

1           we represented him for purposes of opening an
2           estate, I will instruct him not to answer.
3  BY MR. MAKARA:
4  Q.    Okay. I will pose that question to you
5  limited to the time period after your petition
6  had been denied, and since Mr. Gorbey has been
7  appointed as the administrator, have you had any
8  discussions since then with anyone from Kline &
9  Specter?
10 A.    No, I have not.
11 Q.    Going back to the incident we talked about
12 in August of 2002 that happened in Longport, New
13 Jersey, were the police involved in that incident
14 at all?
15 A.    What report on what incident in Longport,
16 New Jersey?
17 Q.    You stated that your wife was at Longport,
18 down the shore in Longport visiting.
19 A.    No. No. I stated that she was visiting
20 her parents in Longport, came back, and drove
21 back to the marital home, and that's when she
22 drove up the driveway.
23 Q.    Were you in Longport in August of 2002?
24 A.    In Longport in 2002? I guess. A specific

```
 1    time?
 2    Q.    On that -- on that weekend, or whatever
 3    time period it was that your wife took the
 4    children and left, had you been in Longport that
 5    day or the day before?
 6    A.    Yeah.  I was in Longport, New Jersey,
 7    correct.
 8    Q.    That same day?
 9    A.    No, I don't believe it was the same day,
10    but I'm trying to remember.  It might have been
11    the day before or so.
12    Q.    Was there any dispute between you and your
13    wife that occurred while the two of you were in
14    Longport, New Jersey in August of 2002?
15    A.    No.
16    Q.    On the day of the accident, Marissa's
17    accident, how did you find out about it?
18    A.    I received a phone call from my
19    ex-brother-in-law.  I was at Airbase Carpet Mart
20    working in the same office with my father-in-law.
21    Ex-father-in-law.
22    Q.    What location?
23    A.    Here in Delaware.  In New Castle, Delaware.
24    It's the main headquarters.
```

1      ended?
2      A.    Yes.
3      Q.    Did you ever hire another law firm to
4      advise you with respect to your potential rights
5      as a wrongful death plaintiff in a potential
6      lawsuit that you could file on your own against
7      the potentially responsible parties?
8              MR. VAN NAARDEN:  Objection.  You
9          can answer.
10             THE WITNESS:  No.  No.
11             MR. LANDON:  That's not a
12         privileged objection.
13             MR. VAN NAARDEN:  You can answer it if
14         you know.
15             THE WITNESS:  I haven't.
16     BY MR. LANDON:
17     Q.    So the Kline & Specter firm was the only
18     firm that you consulted with whatsoever with
19     respect to your daughter's death?
20     A.    Yes.
21     Q.    Is that true?
22             Did you ever make a decision not to
23     file a wrongful death claim on your own behalf
24     for the death of your daughter?

B&R Services for Professionals, Inc.

1    A.    No.

2    Q.    Did you know that you could have if you had

3    done so within two years of her death?

4    A.    I was informed.

5    Q.    Did you make a decision not to do that?

6    A.    Uh-huh.  I just -- I didn't bother.

7    Q.    Was there an autopsy done?

8    A.    That's a very good question.  A very good

9    question.

10              I had instructed to find out the

11   cause of death and also to have an autopsy done.

12   Barbara Longwell went back into that hospital --

13   came into that hospital and had requested not to

14   have autopsy due to the -- because it's in the

15   Jewish religion not to have an autopsy done.

16   Barbara Longwell -- I'm the father.  I went back

17   and instructed to have an autopsy done on the

18   body.

19   Q.    It didn't happen?

20   A.    You tell me.  You have all the records.

21   Q.    You don't know?

22   A.    Exactly.  You tell me.  Was that --

23   Q.    I don't know.

24   A.    Okay.  Do I? I don't know either.  I don't

B&R Services for Professionals, Inc.