IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF DELAWARE

- - -

| | | |
|---|---|---|
| JAMES H. GORBEY, JR., Administrator of the ESTATE of MARISSA ROSE FISHMAN, Deceased | : : : | CIVIL ACTION NO. 04-4098 |
| -vs- | : | |
| RICHARD LONGWELL | : | |

- - -

| | | |
|---|---|---|
| JAMES H. GORBEY, JR., Administrator of the ESTATE of MARISSA ROSE Deceased | : : : | CIVIL ACTION NO. 04-4118 |
| -vs- | : | |
| ASHLAND CONSTRUCTION COMPANY, INC., et al | : | |

- - -

Oral deposition of JAMES H. GORBEY, JR., ESQUIRE, taken on behalf of the Defendant, Richard Longwell, in the Law Offices of MURPHY, SPADARO & LANDON, 1011 Centre Road, Wilmington, Delaware, on Wednesday, April 5, 2006, commencing at or about 1:10 p.m., before Colleen A. Young, Court Reporter - Notary Public.

- - -

B & R SERVICES FOR PROFESSIONALS, INC.
235 SOUTH 13th STREET
PHILADELPHIA, PENNSYLVANIA 19107
(215) 546-7400
B&R Services for Professionals, Inc.

1   funeral expenses, including the burial and the

2   tombstone, and the flowers, the church, or

3   whatever.  There would be the stone inscription

4   of the stone.  All the little things that you

5   make sure people are taking care of.

6               And then you have, quite frankly,

7   my bill.  You know, my job is to say this is what

8   I've done.  And when I say I have to be flexible,

9   again, it depends on the size of the estate.  If

10  I have a very small estate and I have all sorts

11  of time in it, but there are heirs, the judge may

12  not give me all the money I want.  If there is a

13  big estate then there is a formula.

14              For instance, if you get into a

15  million dollar estate, there is a case in

16  Pennsylvania that lawyers who do this work rely

17  on called the Johnson Estate.  And it sets forth

18  how you're paid.  It basically says you've got

19  seven percent, I think on the first hundred, and

20  six percent on the next 50, and five percent, and

21  then you get to that point where you are at three

22  percent on the rest.  And I think that's

23  somewhere around $250,000.  That's how you're

24  paid.  Always subject to court approval.

1           Now, with respect to the litigation
2    lawyers, you know, the court that does their
3    litigation takes care of that.
4    Q.    Am I to understand that in a case like this
5    where we have a deceased child, after the payment
6    of the fees and the various attorneys involved,
7    and the costs that you described, under the
8    testacy statute that money, the money that is
9    left over, would be divided among existing or
10   living relatives?  According to our statute?
11   A.    Parents first.
12   Q.    Parents first.
13   A.    Parents can renounce their right to receive
14   it in favor of someone else.  It's not like they
15   don't have any choice about it.
16   Q.    You mentioned earlier a 50/50 split between
17   the parents.  Would that be standard?
18   A.    Pretty standard, yes.  There can be
19   exceptions, if there are child support issues
20   unpaid.  I've never had this one, but I mean
21   there are questions of abandonment, but in this
22   case I don't think so.
23           I told you I do a lot of domestic
24   relations work, so I've seen the parties in

1   that.

2   Q.   When you're hired -- and your duty as the
3   administrator of the estate at that point is to
4   administer the estate and determine whether there
5   are assets, to determine whether there are
6   liabilities, and perform the functions that an
7   administrator is suppose to perform by law?

8   A.   Irrespective of the feelings of family
9   members.

10  Q.   Okay.

11  A.   Correct.

12  Q.   So it wouldn't matter whether mom or dad
13  wanted you to do anything in particular in terms
14  of filing a lawsuit, they don't have the power to
15  tell you what to do, correct?

16  A.   I think that the only thing that they can
17  do is petition to remove me, and that would
18  probably be spurious under the circumstances
19  today.  Or wait until after the litigation to see
20  if there is an asset and then object to the
21  proposed distribution that I would make.

22           In other words, going back to the
23  audit process, when everything is over, you
24  finished your advertising, there are forms that

```
 1    you fill out for the orphans court, they're easy
 2    for the Delaware lawyers to look at, they're in
 3    our rule book.  You fill out that form, you list
 4    it with the orphans court, you send notice out to
 5    the heirs, and they have plenty of time to object
 6    to whatever you are saying.  And even if they
 7    don't file written objections, they can show up
 8    in court and object, and the court will then set
 9    a date for either a conference, or a mediation,
10    or trial, or all of the above.
11    Q.    I'm just trying to figure out, make sure I
12    am clear on your both legal and ethical
13    obligations as the administrator of the estate,
14    which all of those obligations run to the estate?
15    A.    That's correct.
16    Q.    Okay.  So all decisions that you make with
17    respect to pursuing or not pursuing litigation
18    are decisions that you make on behalf of the
19    estate, and in your view are in the best
20    interests of the estate?
21    A.    That's correct.
22    Q.    Okay.
23    A.    I am aware.  You know, I sign pleadings,
24    so...
```

1   Q.   And --

2   A.   But I wasn't aware of that when I was
3   appointed.

4   Q.   In this case, you as the administrator of
5   the estate are the client of Kline & Specter?

6   A.   Yes.

7   Q.   And you as the administer of the estate,
8   were there to be, hypothetically, a settlement
9   offer, would have to make the ultimate decision
10   as to whether to accept or reject that offer on
11   behalf of the estate?

12   A.   I don't know what your procedure is in
13   Delaware. In Pennsylvania I would say it's a
14   qualified yes. I would have to make the initial
15   decision that that was an appropriate offer, and
16   then we would petition the court for court
17   approval. At that point, the parents could come
18   in and object if they didn't like the offer.

19   Q.   How does that -- how quickly does that
20   procedure proceed, in your experience?

21   A.   Well, in Delaware County, I've seen it done
22   two ways, and in Philadelphia County I've seen it
23   done two ways, Chester County. You can say what
24   you do mean, two ways.

1   in my firm, and he was my father's law clerk

2   before he was the orphans law clerk, and he is in

3   my building.

4           I am just saying I do this every

5   day.  And the judge tries to get his clerks to

6   hammer out a settlement.  If that doesn't work

7   you get a real trial.  Not a jury trial, but you

8   get a real hearing.

9   Q.    Has Rochelle Fishman renounced her right to

10  receive any share of the estate that might exist

11  at the end of the day?

12  A.    I have not received -- as of the time we're

13  speaking I have not received any such

14  renunciation or anything like that, whether it's

15  called -- no matter what it is called.

16  Q.    Nor has -- I take it, nor has Eric Fishman?

17  A.    I have had no direct communications, to my

18  knowledge, with either of them.

19  Q.    Talking about the fees that you're entitled

20  to collect as the administrator in a large

21  estate, if -- I want to make sure I understand

22  that.

23          Let's just say for the sake of

24  argument you got --