## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

JAMES H. GORBEY, JR., Administrator of the   :
Estate of Marissa Rose Fishman, Deceased,   :
                                     :   Civil Action No.: 05-211-KAJ
                 Plaintiff,   :
vs.   :
  :
RICHARD LONGWILL, BARBARA   :
LONGWILL, AIR BASE CARPET MART, INC.   :
d/b/a Air Base Distributing, Inc. d/b/a Air Base   :
Carpet Mart, AIR BASE DISTRIBUTING, INC.,   :
ASHLAND CONSTRUCTION COMPANY, INC.,   :
JOSEPH RIZZO & SONS CONSTRUCTION,   :
VINCENT RIZZO CONSTRUCTION CO., INC.   :
d/b/a Ashland Construction Co., Inc.,   JOSEPH V.   :
RIZZO, and VINCENT RIZZO,   :
                 Defendants.   :
_____

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS',
ASHLAND CONSTRUCTION COMPANY, INC., VINCENT RIZZO CONSTRUCTION CO.,
INC., d/b/a ASHLAND CONSTRUCTION CO., INC. JOSEPH V. RIZZO, AND VINCENT
RIZZO, MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Respectfully submitted,
**Wetzel & Associates, P.A.**


BY: **/s/ Benjamin C. Wetzel, III**
      **Benjamin C. Wetzel, III (I.D. No. 985)**
      The Carriage House
      1100 North Grant Avenue
      Suite 201
      Wilmington, DE 19805
      (302) 652-1200
         and
      **Kline & Specter, P.C.**


BY:   **/S/ Matthew A. Casey, Esquire**
      Matthew A. Casey, Esquire
      Joshua Van Naarden, Esquire
      1525 Locust Street
      19th Floor
Date: May 22, 2006       Philadelphia PA 19102


## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................     iii

NATURE AND STAGE OF PROCEEDINGS............................................     iv

COUNTER-STATEMENT OF FACTS......................................................     vi

SUMMARY OF ARGUMENT....................................................................     viii

ARGUMENT...............................................................................................     1


I.   THE SUMMARY JUDGMENT STANDARD ...................................     1

II.  BY THEIR OWN SWORN TESTIMONY AT DEPOSITION, THE
     ASHLAND DEFENDANTS ADMIT THAT THEY HAD A DUTY
     TO KEEP THE SUBJECT DOORS CLOSED IN ORDER TO KEEP
     YOUNG CHILDREN FROM ACCESSING THE POOL AREA....     1

     A.     Their Own Sworn Testimony is Fatal to the Instant Motion…     1

     B.     It Was Foreseeable That Leaving the Doors Opened
            Could Be Dangerous for Children…………………………..     4

III. MOVING DEFENDANTS FAIL TO CITE EVEN TO A SINGLE
     CASE THAT SUPPORTS THEIR ARGUMENT THAT NO DUTY
     EXISTS HERE OR THAT THE ELEMENT OF CONTROL IS
     MISSING…………………………………………………………...     8

IV. MULTIPLE ISSUES OF MATERIAL FACT EXIST THAT RENDER
     SUMMARY JUDGMENT INAPPROPRIATE……………………..     10

CONCLUSION............................................................................................     15

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE**

Pacitti v. Macys,
     193 F.3d 766 (3d Cir.1999)............................................................  1

Blizzard v. Hastings,
     886 F.Supp. 405 (D.Del.1995)......................................................  1

Olson v. General Elec. Astrospace,
     101 F.3d 947 (3d Cir.1996)...........................................................  1

Sweetman v. Strescon,
     389 A.2d 1319 (Del. Super. 1978)……………………………….  1

Figgs v. Bellevue Holding Company,
     652 A.2d 1084 (Del. Super. 1994)……………………………….  7

Delmarva Power & Light Co. v. Burrows,
     435 A.2d 716 (Del. Super. 1981)……………………………….  7

Hawthorne v. Edis Co.,
     2003 WL 23009254 (Del. Super. Jul 14, 2003)…………………  8

Craig v. A.A.R. Realty Corp.
     576 A.2d 688 (Del. Super. 1989)……………………………….  9

Monroe Park Apartments Corp v. Bennett,
     232 A.2d 105 (Del. 1967)……………………………………...  9

Peters v. Gelb,
     303 A.2d 685 (Del. Sup. 1973)………………………………..  9

Rabar v. DuPont de Nemours & Co.,
     415 A.2d 499 (Del. Super. 1980) (implied overruling on other grounds
     recognized by Figgs v. Bellevue Holding Co., 652 A.2d 1084, 1092
     (Del. Super. 1994)……………………………………………..  8

**RULES AND STATUTES**:

Fed. R. Civ. P 56(c)…………………………………………………  1

Restatement 2d of Torts § 328C (1965)………………….……………  7

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

This case involves the August 30, 2002, drowning of an infant, Marissa Rose Fishman, age 20 months, at an indoor swimming pool located in the home of her maternal grandparents at 3220 Coachman Road, Wilmington, Delaware.  Plaintiff alleges, among other things, that workmen employed by the Moving Defendants ("The Ashland Defendants") left a door open to the home's indoor pool. Plaintiff 's decedent was allowed to enter the pool area and subsequently drowned.  This case involves claims for wrongful death and survival act damages.

The Ashland Defendants have moved for summary judgment as to liability, claiming the following: that the Ashland Defendants (1) owed had no duty to Marissa Fishman because the incident occurred in an area outside of their control; (2) There is no genuine issue of material fact that any of the Ashland defendants opened the interior sliding glass door leading from the dining room to the enclosed pool; and (3) There are no genuine issues of material fact regarding Joseph Rizzo individually.  The Ashland Defendants are wrong.  This Brief responds in opposition to the Ashland Defendants' Motion for Summary Judgment.

## COUNTER-STATEMENT OF FACTS RELEVANT TO INSTANT MOTION

This case involves the August 30, 2002, drowning of Marissa Rose Fishman, at an indoor swimming pool located at the home of her maternal grandparents at 3220 Coachman Road, Wilmington, Delaware. See Certificate of Death of Marissa Rose Fishman, attached hereto as Exhibit "A". She was twenty months old. Id. The Ashland Defendants had been hired by Richard and Barbara Longwill to do work at the Longwill residence. Dep. tr. of Vincent Rizzo dated January 30, 2006 at p. 8, attached as Exhibit "B". The work involved the pool area, both inside the enclosed indoor pool and the outside patio immediately adjacent to the enclosed pool. Id. The first phase of the project involved remodeling of the pool enclosure itself, and included, inter alia, removing the glass, replacing a "knee wall," and then replacing the glass wall enclosing the pool. Id. at p. 20. This work required the workers to be inside the pool enclosure. Dep. tr. Salvador Ortiz-Britto dated February 23, 2006 at p. 11, attached as Exhibit "C". The second phase of the work apparently involved replacing the patio floor with brick pavers. Dep. tr. Rizzo at p. 21. The Ashland Construction Company had been working on the project for several weeks prior to the drowning and the work was primarily done by Vincent Rizzo, co-owner of the company, and one of his employees, Salvador Ortiz-Britto. Id. at pp. 22, 27. During this time period, the Ashland Construction workers were well aware that there was a toddler residing in the Longwill residence. Dep. tr. Ortiz-Britto, pp. 19-21

On the day of the drowning, August 30, 2002, Mrs. Longwill instructed Vincent Rizzo to clean a table and several chairs that were covered with dust from the cutting of pavers, and to move the furniture from the patio to the enclosed pool area. Dep. tr. Rizzo, p. 37. During these instructions, Mrs. Longwill brought Mr. Rizzo through the dining room and opened the interior sliding glass door between the dining room and the enclosed pool area to direct Mr. Rizzo as to

where to place the furniture.  <u>Id.</u>  Following these instructions, Mrs. Longwill closed the interior sliding glass door but did not lock the door since this was the only access from the patio.  Dep. tr. of Barbara Longwill dated March 7, 2006 at p. 28, attached hereto as Exhibit "D".  Mr. Rizzo then exited the dining room through the exterior sliding glass door and Mrs. Longwill returned to her work in the kitchen.  <u>Id.</u>  In her testimony, Mrs. Longwill noted that the door was heavy and was impossible for Marissa to open, even if unlocked.  <u>Id.</u> at pp. 80 – 81.

The Ashland Construction employee who was helping Mr. Rizzo, Salvatore Ortiz-Britto, testified that he was instructed by Mr. Rizzo to clean off the chairs and table, and that he carried three of the chairs into the pool area and Mr. Rizzo carried in the remainder.  Dep. tr. Ortiz at pp. 25-26.  Mr. Ortiz could not remember whether Mr. Rizzo then carried in the table by himself or whether Mr. Ortiz assisted him.  <u>Id.</u>  Mr. Rizzo testified that both he and Mr. Ortiz carried in the table, and while doing so, Marissa was found by her mother floating face down in the shallow end of the pool.  Dep. tr. Rizzo at p. 63.  CPR was started at the house and continued in the ambulance on the way to DuPont Hospital, where Marissa died.  See Death Certificate, attached hereto as Exhibit A.

## <u>SUMMARY OF ARGUMENT</u>

By their own sworn testimony at deposition, the Ashland defendants admit that they had a duty to keep the subject doors closed in order to keep young children from accessing the pool area. Vincent Rizzo, a co-owner of Ashland Construction who was directing the work on the day in question, instructed his worker, Salvatore Ortiz-Britto, that he needed to make sure that the doors were closed on a regular basis in order to keep children from accessing the pool. Mr. Rizzo further admitted that if he and Mr. Ortiz-Britto were going to be away from the door for a period of time, then they had to make sure that the doors were closed. The Ashland scope of work included the pool area and the doors leading to the pool, and they had full "control" over the opening and closing of the doors leading to the pool area during the time that they were moving the furniture.

Moving defendants fail to cite to even a single case that supports their argument that no duty exists here. Similarly, they fail to cite to a single case that suggests that Ashland lacked the requisite "control" of the work zone here. Tellingly, the primary support for their argument comes from selective citations to self-serving testimony of their own employees.

Multiple issues of material fact exist that render summary judgment inappropriate, including conflicting statements of witnesses, shifting explanations from the Ashland employees, and alternative theories as to how the accident happened.

Accordingly, the Defendants Motion for Summary Judgment lacks merit and should be denied.

<u>**ARGUMENT**</u>

**I.     THE SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.  <u>See</u> Fed. R. Civ. P 56(c). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  <u>Pacitti v. Macy's</u>, 193 F.3d 766, 772 (3d Cir.1999). An issue is genuine if a reasonable jury could return a verdict for the Plaintiff given the evidence. <u>Blizzard v. Hastings</u>, 886 F.Supp. 405, 408 (D.Del.1995). The nonmoving party, however, must demonstrate the existence of a material fact by supplying sufficient evidence - not mere allegations - for a reasonable jury to find for the non-movant. <u>Olson v. General Elec. Astrospace</u>, 101 F.3d 947, 951 (3d Cir.1996).  All reasonable inferences must be drawn in favor of the non-moving party.  <u>Sweetman v Strescon</u>, 389 A.2d 1319, 1324 (Del.Super. 1978).  Motion for Summery Judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.  <u>Ebersole v. Lowengrub</u>, 180 A.2d 467, 470 (Del.Super. 1962).

**II.     BY THEIR OWN SWORN TESTIMONY AT DEPOSITION, THE ASHLAND DEFENDANTS ADMIT THAT THEY HAD A DUTY TO KEEP THE SUBJECT DOORS CLOSED IN ORDER TO KEEP YOUNG CHILDREN FROM ACCESSING THE POOL AREA**

   **A.     <u>Their Own Sworn Testimony is Fatal to the Instant Motion.</u>**

There is no clearer example of the instant Motion's lack of merit than the sworn deposition testimony of the Ashland defendants themselves. The Ashland defendants admit that they had a duty to keep the subject doors closed in order to keep young children from accessing

the pool area. Vincent Rizzo, a co-owner of Ashland Construction who was directing the work on the day in question, instructed his worker, Salvatore Ortiz-Britto, that he needed to make sure that the doors were closed on a regular basis in order to keep children from accessing the pool. Mr. Rizzo further admitted that if he and Mr. Ortiz-Britto were going to be away from the door for a period of time, then they had to make sure that the doors were closed. The Ashland scope of work included the pool area and the doors leading to the pool, and they had full "control" over the opening and closing of the doors leading to the pool area during the time that they were moving the furniture.

Excerpted here is the deposition testimony of Mr. Ortiz, an Ashland employee:

Q.    Did you or Mr. Rizzo do anything at the end of the day to protect the pool from being able to be accessed by children?
A.    We close everything.
Q.    You did?
A.    Yes.  We saw that everything was closed.
Q.    Did you make sure that the doors leading into the pool area were closed?
A.    Yes.
Q.    On a nightly basis when would you leave the job?
A.    Yes.
Q.    And that's because you knew that that was part of your job, correct?
A.    Yes.
Q.    And you new that there were children, small children living in the home, correct?
A.    Yes.  I remember hearing that little boy, because there was a girl that used to take care of this boy?
Q.    What little boy?
A.    The little boy was like this (indicating).  Was very little, yes.
Q.    What boy are you talking about?
A.    The little boy that was drowned.  I remember seeing the girl taking care of this boy.
Q.    The child who drown in the pool was a young girl.  I'm just telling you that.
A.    Oh.
Q.    But in any event, you remember seeing the child who drown in the pool on the days prior to the drowning incident?
A.    I remember that I used to see this girl taking this child out of the house every day that I came, and she would take him for a walk.
Q.    So you knew that there was at least one little child living there when you were working there, correct?

2

A.      Yes.
Q.      And is that one of the reasons that when you would leave every night you would make sure that the doors to the pool were closed?
        MR. LANDON:         Objection to the form.
        THE WITNESS:        Yes.
        BY MR. CASEY:
Q.      Did Mr. Rizzo tell you at any time that you needed to make sure that the doors were kept closed because of the possibility of young children accessing the pool?
        MR. LANDON:         Objection to the form
        THE WITNESS:        That door was always closed.
        BY MR. CASEY:
Q.      You need to listen to my question.
        **Did Mr. Rizzo tell you that you needed to make sure the doors were kept closed in order to keep children from accessing the pool area?**
        MR. LANDON:         Same objection.
        THE WITNESS:        **Yes.**

Dep. tr. of Salvador Ortiz-Britto, pgs.19- 21 (emphasis supplied)

Vincent Rizzo's testimony, while evasive and cagey, includes clear admissions that he understood that, as a contractor working at home where he knew there were young children, he had a duty to make sure that his work was performed safely and that steps, including closing doors, had to be taken in order to comply with his safety obligations:

Q.      You told me earlier that if that area was left unguarded for a certain period of time, you would have to close the doors, correct?
A.      I'm telling you this, if I walked in that house, and I opened up that door, okay, then, yes it's my responsibility to close it.  But I did not open that door.  The only door I opened was from the outside of that house, walking into that house.  I don't know why she wanted that door opened.  There could have been a reason why she wanted it open, but I know if I opened that door physically myself, yes, then it would have been my option to close it.

                              *        *        *
Q.      If you were leaving that area, that is the pool area, and the dining room and the patio unguarded for a period of time, would it be your job to make sure that those doors are closed after you worked in that area?
        Mr. Landon:   Objection
        The Witness:  I mean – I mean I'm responsible for my work area.  That's what I'm responsible for.

Dep. tr. Rizzo at p. 84, 86.

3

Additional testimony from Mr. Ortiz shows unambiguously that he appreciated that he had a duty toward Marissa Fishman and, indeed, had the accident not occurred, he would have closed the door in order to keep children out. Even under his self-serving version of the facts, it is clear that a duty attaches. In any event, the jury must determine which version of the multiple versions of the facts is true:

> Q.    When you were walking into the pool area with the chairs, was it your intention to close the door behind you?
>
> A.    It was open.
>
> Q.    No, but after you went through the door, was it your intention to close the door behind you?
>
> A.    No, because the accident happened already, and the child was already in the swimming pool.
>
> Q.    My question is different.  My question is, did you intend to close the door behind you?
>
> A.    Yes.
>
> Q.    Because of the children, correct?
>
> Mr. Landon:  Objection to form.
>
> The Witness:  Yes.
>
> By Mr. Casey:
>
> Q.    But your testimony is that you just didn't get a chance to close the door behind you because the woman was there, and the accident had already happened?
>
> A.    Yes.
>
> Q.    But had that not occurred, you were going to close the door behind you as you went into the pool in order to protect the pool from the children, correct?
>
> Mr. Landon:  Objection to the form.
>
> The Witness:  Yes.
>
> By Mr. Casey:
>
> Q.    And you understood that to be part of your job?
>
> Mr. Landon:  Objection to the form.
>
> The Witness:  Yes.

Dep. tr. Ortiz-Britto at p. 45-47.


### B.    It Was Foreseeable That Leaving the Doors Opened Could Be Dangerous for Children

Ashland Construction was hired by the Longwill defendants, to perform remodeling work in the pool area which encompassed the enclosed pool area itself and the outside patio

immediately adjacent to the enclosed pool area. On the day of Marissa's tragic death, Mrs. Longwill instructed the workers to clean tables and chairs that were covered with brick dust from the brick paver work that Ashland Construction was performing on the patio, and to move the table and chairs from the patio to the enclosed pool area, where Ashland Construction had been working only several days earlier as part of the same project. The task of cleaning and moving furniture made dusty *by their own work* and moving the furniture to a clean area is certainly part of the project for which the Defendant Ashland Construction was hired.

The task of moving the furniture from the patio to the enclosed pool area required the Ashland Construction workers to enter the dining room via an exterior sliding glass door, carry the furniture through the dining room, and enter the pool area via the interior sliding glass door that connected the dining room and the enclosed pool. The Ashland workers had to exit the enclosed pool area using the same doors. Rizzo admits in his testimony, cited *infra*, that he entered the pool area with the chairs and did not see the baby floating in the pool. Rizzo also admitted in his testimony that he exited the pool area via the sliding glass door and did not close the door. As set forth in more detail below, there is a genuine dispute as to how much time elapsed between delivery of the chairs and their reentering the pool area with the table.

After giving instructions to the workers, Mrs. Longwill returned to her work in the kitchen, entrusting Rizzo and Ortiz to perform the task requested without supervision and to do it safely. It was foreseeable that, if the workers left the sliding glass door open, 20 month old Marissa could enter the pool area, fall into the pool, and drown. Ashland Construction defendants were the last adults to enter and exit the interior sliding glass door between the dining room and the enclosed pool prior to the discovery of Marissa's body in the shallow end of the pool, and the Ashland Construction workers had the duty to exercise reasonable care to close the

5

door upon exiting the pool area.  As outlined above, their own deposition testimony outlined above makes clear that they understood this.

In any event, even if access to the pool area through the sliding glass door was not part of the work the Ashland defendants were performing, which determination will be for the jury to make, basic principles of negligence required them to conduct their work with reasonable care. It is undisputed that they were in the pool area and entered through the sliding glass door between the dining room and the pool area.  Ashland Defendants were on the property for business, they were aware that a toddler was on the premises, and they had duty not to endanger anyone on the property by their presence and actions, including exiting the pool area without closing the sliding glass door.  Either way, the Ashland Defendants had a duty of reasonable care to Marissa to close the interior sliding glass door when they exited the enclosed pool area whether or not they found the door open or closed when they entered the pool area.  They breached that duty and are liable for the death of Marissa Rose Fishman.  Accordingly, the Motion for Summary Judgment should be denied.

It is black-letter law that the tort of negligence requires the establishment of a duty owed to the plaintiff by the defendant, and the fact that the breach of that duty was the proximate cause of harm to the plaintiff.  Duty is a question of law that requires the court to determine "whether the interest of the plaintiff who has suffered invasion is entitled to legal protection at the hands of the defendant." W. Page Keeton et al., Prosser and Keeton on the Law of Torts, §37, 236 (5th ed. 1984).  In negligence cases, duty usually requires reasonable care, i.e. the standard of conduct of a reasonable person under the same or similar circumstances.  Id.  "Once it is determined that reasonable persons may differ as to whether a fact has been proved, the probative value of the evidence, and the conclusions to be drawn from it, lies in the hands of the jury."  Id.  The jury

must not only decide whether the evidence is credible, but must also draw or refuse to draw

inferences from the testimony as to whether there is a reasonable difference of opinion.

Restatement 2d Torts, § 328C.

Delaware law measures duties owed in "terms of reasonableness.  One's duty is to act

reasonably, as a reasonably prudent [person] (or entity) would."  Figgs v. Bellevue Holding

Company, 652 A.2d 1084, 1092 (Del. Super. 1994); (citing Delmarva Power & Light Co. v.

Burrows, 435 A.2d 716, 718 (Del. Super. 1981).  Rather than applying the simple legal theory of

negligence and reasonable care, Moving Defendants argue, without any relevant precedent to

support them, that under the facts presented in the case at bar, Delaware law supports summary

judgment because there is missing some requisite degree of "control" of the doorway to the pool.

This argument lacks merit.

First, Moving Defendants had the requisite degree of control over the doorways while

they were doing their job to meet any such requirement under Delaware law, if one exists under

the facts in the case at bar. Moving Defendants fail to cite any applicable case to support their

argument.

Secondly, the testimony of Moving Defendants' own employees, cited *supra*,

demonstrates that that they understood that they were to keep doors to the pool closed and,

accordingly, had sufficient control over that aspect of the work in order for a duty to attach.

The discrepancies in the testimony of the co-defendants Ashland Construction Company

and Barbara Longwill, and the discrepancies between the testimonies of the Moving Defendants'

employees, as to exactly what happened prior to the accident (see *infra*) creates genuine issues of

fact as to who was the last person to walk away from the open interior sliding glass door prior to

the entry of Marissa Rose Fishman into the pool area.

7

"The existence of a duty will always be a fact specific inquiry. Summary judgment is not appropriate [where] there are material issues of fact in dispute." Hawthorne, 2003 WL 23009254 at *9. Defendant Ashland Construction Company's Motion for Summary Judgment should be denied because there are genuine issues of material fact.

### III.    MOVING DEFENDANTS FAIL TO CITE EVEN TO A SINGLE CASE THAT SUPPORTS THEIR ARGUMENT THAT NO DUTY EXISTS HERE OR THAT THE ELEMENT OF CONTROL IS MISSING

Moving defendants fail to cite to even a single case that supports their argument that no duty exists here. Similarly, they fail to cite to a single case that suggests that Ashland lacked the requisite "control" of the work zone here. Tellingly, the primary support for their argument comes from selective citations to self-serving testimony of their own employees.

Simply put, every case cited by the Moving Defendants is inapposite. A brief analysis of the purported precedents in Moving Defendants' Brief highlights its lack of merit.

First, Moving Defendants rely heavily on Rabar v. E.I. DuPont de Nemours & Co., Inc., 415 A.2d 499 (Del. Super. 1980), as a foundation for their argument that Delaware law requires "control of a work area" in order for a plaintiff to impose a duty on a defendant. Conspicuously absent in Moving Defendants' Brief is an acknowledgement that this case is no longer good law - - it has been *overruled*. (overruling recognized by Hawthorne v. Edis Co., 2003 WL 23009254 (Del. Super. Jul 14, 2003) In any event, even if Rabar were good law, it simply has no applicability to the case at bar, which involves work being done by a contractor at a home and the duty owed by the contractor to children living in the home. The case at bar is a basic negligence case, and Moving Defendants' attempts to bootstrap inapposite case law onto the facts here is unavailing.

Moving Defendants cite other distinguishable cases as well. The court in Craig v. A.A.R.

8

Realty Corp., (citation omitted), cited approvingly by Moving Defendants, held that nonpossessory landlord/mall owner did not have duty to protect business invitees of its tenants from criminal attacks in the absence of actual control over the premises. 576 A.2d 688 (Del. Super. 1989). There is simply no factual or legal nexus with the case at bar. Here, it is undisputed that each of the Ashland employees at the home on the day in question had full authority to both open and close doors leading to and from the pool area, and their own testimony, cited *supra*, demonstrates that they understood *that closing doors to keep children away from the pool area was part of their job*.

Defendants also cite Monroe Park Apartments Corp. v. Bennett, 232 A.2d 105 (Del. 1967), where the court denied defendant's motion for summary judgment regarding issue of whether defendant landlord had exercised reasonable care in maintaining walkway in reasonably safe condition for use by tenants. The case at bar does not involve criminal activity and does not involve a landlord/tenant relation ship. In fact, the court in Monroe Park Apartments Corp. clearly noted *that their holding was limited to the duty the landlord owed to its tenants under the facts of that case*. Id., at 108.

Moving Defendants also cite to Peters v Gelb, 303 A.2d 685 (Del. Sup. 1973), where the court awarded a new trial after a plaintiff's verdict in an action by a husband and wife against a surgeon for damages resulting from an unsuccessful vasectomy operation where plaintiff offered testimony of unqualified expert. There was no discussion of "duty" in Peters. Here, we have no physician-patient relationship and no issue of an unqualified expert. The utter lack of relevant case law in Moving Defendants brief exposes the Motion's lack of merit.

**IV.    MULTIPLE ISSUES OF MATERIAL FACT EXIST THAT RENDER SUMMARY**

**JUDGMENT INAPPROPRIATE**

Multiple issues of material fact exist that render summary judgment inappropriate, including conflicting statements of witnesses, shifting explanations from the Ashland employees, and alternative theories as to how the accident happened.

By way of just one example, there are genuine issues of material fact as to who left the interior sliding glass door open. A written statement, made by Barbara Longwill several weeks after the incident, memorialized the events leading up to the drowning of Marissa Rose Fishman. This statement, along with testimony by co-Defendants Ashland Construction and Barbara Longwill, establish that Ashland Construction Company was hired to perform work on the enclosed pool and adjacent outside patio. As part of this work, Mrs. Longwill gave instructions to the Ashland Construction workers to clean and then move furniture from the patio area into the enclosed pool area. It is undisputed that the only access and egress from the enclosed pool area that the Ashland workers could have possibly used was the interior sliding glass door between the dining room and the enclosed pool area. It is also undisputed that, after giving instructions to the Ashland Construction as to the work to be done, Mrs. Longwill returned to her work in the kitchen and entrusted the Ashland Construction workers to safely perform the task.

Defendant Ashland Construction Company admit in their Motion for Summary Judgment that there are indeed genuine issues of material fact when they stated that co-defendant Barbara Longwill's "written statement provides sufficient fodder for cross-examination for the *jury* to conclude her recollection of the events *might* be faulty" (emphasis added). The Ashland Construction Defendants also suggest in their Motion for Summary Judgment that discovery has not provided answers to several questions. Those three questions are irrelevant. The important question is not who opened the interior sliding glass door or when it was originally opened. The

10

important question is who failed to close the door upon exiting the pool area.  Co-defendants
Ashland Construction Company and Barbara Longwill blame each other, but Ashland
Construction Company workers were undeniably entering and exiting the enclosed pool area
immediately prior to the discovery of Marissa's lifeless body floating in the pool.

Defendants opined in their motion for summary judgment that there were only two
possible scenarios that led to the tragic death of Marissa Fishman  Both of these scenarios are
based on the premise that Ashland Construction Company's recounting of the events is accurate
and that the police report and the written statement and testimony of co-defendant Barbara
Longwill are false.  Indeed, Moving Defendants rely <u>almost exclusively on the self-serving
testimony of their own witnesses</u>. But Defendant Ashland Construction ignored other possible
scenarios.  They completely ignored the scenario that either Rizzo or Ortiz-Britto cleaned the
chairs first, took them into the pool area, exited the pool area without closing the interior sliding
glass door between the enclosed pool area and the dining room, and did not immediately return,
allowing Marissa Rose Fishman plenty of time to enter the pool area and drown.

Moving Defendants highlight subtle discrepancies between the written statement made by
co-defendant Barbara Longwill several weeks after the incident and her testimony at deposition
six months later, while at the same time ignoring the glaring discrepancies between the testimony
of co-owner Vincent Rizzo and employee Salvador Ortiz-Britto.  Defendant's Motion for
Summary Judgment, p 6.  In fact, scrutiny of the testimonies of Rizzo and Ortiz reveal
discrepancies that might allow a jury to the conclusion that the latter scenario discussed above is
more likely than the previous two scenarios.  Rizzo testified that he was unaware of a toddler
living in the Longwill house:

Q.  My question though was—and I think you answered.  You said that

11

you were aware that there were some older children?
A.  Correct.
Q.  Were you aware that there was this infant, Marissa Fishman, staying at
the premises?
A.  I had not seen her.
Q.  So you were not aware—
A.  Exactly.
Q.  –as of August 30, 2002, that there was a little baby staying at the place?
A.  That's correct.

Depo. Vincent Rizzo 31:23 to 32:10 (January 30, 2006).

There were discrepancies in the testimonies of Rizzo and Ortiz, where they would

contradict each other, and at times themselves, as to exactly what transpired during the 45

minutes prior to the finding of Marissa in the pool.  For instance, Rizzo was adamant that he

opened the exterior sliding glass door, and then he and Ortiz carried the table into the pool area

when Rochelle Fishman found her daughter floating lifeless and face down in the pool, but soon

thereafter testified that he could not remember whether the table or the chairs were brought into

the pool area first:

A.      And after everything was done, okay, and ready to go back in, then we
        proceeded to walk—we opened up the outside door of the house, we
        walked in with the chairs, and then right back out and got the table, and
        came right back in with the table.  As far as the doors were open, okay, the
        only door that was closed, okay, was the outside door that led to the
        outside of the house.  That's where we were working at.  So we brought
        the chairs in, walked right back out, got the table.  We were carrying the
        table in, we were setting the table—matter of the fact the table was still in
        my hands, walking backward to the steps that went down to the pool area.
        We were setting the table down, and then as—the table didn't even hit the
        ground yet, and I looked up, and I heard Rochelle up on the top screaming.

Depo. Vincent Rizzo 38:9 to 39:2 (January 30, 2006).  Rizzo then testified that he could not

remember whether he brought the chairs or the table in first, but was absolutely certain that he

opened the outside door prior to bringing in the chairs:

12

Q.  Who carried the table in from the patio, into the pool area?
A.  Salvador and myself.
Q.  Each of you carried it in together?
A.  Uh-uh.  Yes.
Q.  One helping the other?
A.  Exactly.
Q.  Had you already carried the chairs in?
A.  If I'm not mistaken—that's a good question.  The table—I can't remember if the chairs were brought in or if the table was first.  Regardless of either one, it was—they were right there with each other, you know.
Q.  I'm not sure I know what you mean.
A.  If I remember correctly, I think the table was probably brought in first—or the chairs.  I can't remember, the chairs or the table.  But they were both—everything was cleaned before it was brought into the house.
Q.  So you cleaned everything and then brought them all in?
A.  That's absolutely correct.
Q.  How is it that you remember that, sir?
A.  Because I would not even attempt to bring the table in and have something else dirty outside unless I was going to bring everything in at one shot.

Id., at 53:17 to 54:19.

Q.  So when you were finished cleaning and decided—or when you had to bring them into the house did you then open the sliding glass door between the patio and the house that goes into the house?
A.  The patio door that led into the house, I had to open that door to bring the table in, and the chairs.
Q.  So the answer is yes, you opened the door?
A.  Yes.
Q.  And then did you open any door between the interior of the house and the pool room?
A.  No, sir.  That door was open.
Q.  How is it that you remember that?
A.  Because if I was carrying chairs in, I was carrying two chairs at one time.  I didn't stop to open up a door.  The only thing I opened up that outside door to bring the table and chairs in.
Q.  So what I'm gathering from what you're saying is you don't remember, but you're presuming because you think you would have carried two chairs at once; is that what you're saying?
        Mr. Landon:  Objection.
        The Witness:  No.
By Mr. Casey:
Q.  Here's what I want.  I don't want you to presume or assume anything.

13

I want to know if you remember specifically.
A.  I remember that that door—I do remember that that door was open
when I walked into that house.  I do remember that, because I would know
if I had to open up two doors.  I do remember opening up the one door
from outside leading into the house.

Id., at 61:6 to 63:2.  In contrast, Mr. Ortiz testified that:

Q.  When you were going into the home, did you open the door between
the patio and the dining room?
A.  No.
Q.  Who did?
A.  The owners of the house were opening that door.
Q.  The owners of the house were opened the door to the dining room to
let you in with the furniture?
A.  Yes.  To be able to go through there.

Depo. Salvatore Ortiz-Britto 26:13 to 26:22 (February 23, 2006).  In addition, Ortiz also testified

that he only made one trip into the pool area with three chairs, and that he was in the process of

placing the chairs in one corner of the pool area, at the direction of Mr. Rizzo, when Rochelle

Fishman started screaming that Marissa was floating in the pool:

Q.  Sir, when you dropped the furniture, the chairs, did you have to go
back outside to get more furniture?
        Mr. Landon:  Objection to form.
        The Witness:  I know that I did the first trip with my chairs.  I was
going to drop those chairs in the swimming pool area, and I saw the lady
come in behind me, and she dive herself in the pool.
By Mr. Casey:
Q.  So you made one trip?
A.  Yes.

Id., at 34: 18 to 35:6.

In any event, the fact that Moving Defendants' whole argument rests upon an

interpretation of *facts* is fatal to the instant Motion. In sum, all of the above are genuine issues of

material fact that require evaluation by the jury to determine who was ultimately responsible for

Marissa Rose Fishman's tragic death and, accordingly, Defendant Ashland Construction

14

Company's Motion for Summary Judgment should be denied.

### CONCLUSION

For the reasons set forth above, the plaintiff, James H. Gorbey, Jr., administrator of the

estate of Marissa Rose Fishman, deceased, respectfully requests that this Honorable Court deny

the Motion for Summary Judgment as to liability made by the defendants, Ashland Construction

Company, Inc., Vincent Rizzo Construction Co., Inc., d/b/a Ashland Construction Co., Inc.,

Joseph Rizzo, and Vincent Rizzo.


Respectfully submitted,

**Wetzel & Associates, P.A.**

BY: **/s/ Benjamin C. Wetzel, III**

**Benjamin C. Wetzel, III (I.D. No. 985)**
The Carriage House
1100 North Grant Avenue
Suite 201
Wilmington, DE 19805
(302) 652-1200
             and
**Kline & Specter, P.C.**

BY:    **/S/ Matthew A. Casey**
Matthew Casey, Esquire
Joshua Van Naarden, Esquire
1525 Locust Street
19th Floor
Date: May 22, 2006          Philadelphia PA 19102
(215) 772-1000
Attorneys for Plaintiff

15