IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES H. GORBEY, JR.,          )
Administrator of the           )
Estate of Marissa Rose         )
Fishman, Deceased,             )
                               )
              Plaintiff,       )
                               )  C.A. No. 05-211 KAJ
v.                             )  JURY TRIAL DEMANDED
                               )
RICHARD LONGWILL, BARBARA      )
LONGWILL, AIR BASE CARPET      )
MART, INC., d/b/a Air Base)
Distributing, Inc., d/b/a      )
Air Base Carpet Mart, AIR      )
BASE DISTRIBUTING, INC.,       )
ASHLAND CONSTRUCTION           )
COMPANY, INC., JOSEPH          )
RIZZO & SONS CONSTRUCTION )
VINCENT RIZZO CONSTRUCTION)
CO., INC., d/b/a Ashland       )
Construction Co., Inc.,        )
JOSEPH V. RIZZO, VINCENT       )
RIZZO,                         )
                               )
              Defendants.      )


          Deposition of ROCHELLE B. LONGWILL, taken
pursuant to notice at the law offices of Murphy,
Spadaro & Landon, 1011 Centre Road, Suite 210,
Wilmington, Delaware, beginning at 3:15 p.m. on
Tuesday, March 7, 2006, before Heather M.
Triozzi, Registered Professional Reporter,
Certified Shorthand Reporter, and Notary Public.

1  was when you did find Marissa in the pool?

2       A.  I don't.

3       Q.  Okay.  Well --

4       A.  I don't know.

5       Q.  According to the police report, it may or

6  may not be accurate --

7       A.  10:13, 10:21.

8       Q.  Do you know if it was sometime after

9  10:00?

10      A.  Sure.  It must have been sometime after

11  10:00, because when I think about it, I was

12  probably at the hospital by 10:30.

13      Q.  I'll represent to you that in all of the

14  information that I've reviewed from the

15  investigator for Sierra Claims Service, and the

16  police report, and the statements that you have

17  given, that your father has given, no one seems

18  to be able to place Marissa, her whereabouts at

19  any time after about 9:30 in the morning until

20  she was found in the pool.

21           MR. LESSNER:  There's no question

22  pending.

23  BY MR. LANDON:

24      Q.  Okay.  That's just a representation that

1    I'm making.

2              I want you, for purposes of this

3    next question, to assume that to be the case.

4    All right.

5              Do you have any reason or any

6    knowledge from any source where anyone can place

7    Marissa's whereabouts at any time between 10:30

8    or between 9:30 a.m. and 10:13 a.m. in the

9    morning?

10             MR. LESSNER:  Objection; compound.

11   Form.

12   BY MR.  LANDON:

13       Q.   You can answer the question.

14             MR. LESSNER:  If you understand it.

15             THE WITNESS:  If I'm understanding

16   this clearly, you're saying have I spoken to

17   anybody or figured out any point in time between

18   9:30, and 10:00, or something the whereabouts --

19   BY MR.  LANDON:

20       Q.   9:30 and 10:15 where anyone can say where

21   Marissa was or what she was doing?

22       A.   Not speaking to anybody, nor myself going

23   back down with the kids.  And -- no.

24       Q.   Okay.  So you would agree, then, as far as

21

1   you're concerned, and as far as you know, you

2   yourself, there is no one that can identify where

3   she was at any given time between 9:30 and 10:13?

4              MR. HART:  Objection.

5   BY MR. LANDON:

6       Q.   You can answer the question.

7              MR. LESSNER:  If you understand it.

8   You can ask him to repeat it.

9              THE WITNESS:  Well, can you repeat

10  the question?

11  BY MR. LANDON:

12      Q.   Okay.  As far as you know, no one can

13  account for Marissa's whereabouts between 9:30

14  a.m. and 10:13 a.m. that morning?

15             MR. LESSNER:  The objection -- just

16  so I'm clear, when you say no one can account,

17  she's testifying as to her personal knowledge.

18  Are you asking her whether she has knowledge of

19  statements that somebody else has said?

20  BY MR. LANDON:

21      Q.   Do you have any knowledge that anyone has

22  any knowledge --

23      A.   I don't have any knowledge.

24      Q.   Hold on.  Let me ask the question.

1          Do you have any knowledge that there

2   is any person on the planet that has any

3   knowledge as to Marissa's whereabouts between

4   9:30 a.m. and 10:13 a.m.?

5       A.   I don't know.

6       Q.   In other words, she could have been in

7   that pool from 9:30 that morning or she could

8   have been in that pool from --

9              MR. LESSNER:  Objection.  It calls

10  for speculation.  She can only testify as to what

11  she knows.

12  BY MR. LANDON:

13      Q.   And I'm trying to get at what she knows

14  from the opposite way from what she doesn't know.

15  And what you don't know is you don't know what

16  time Marissa actually got into that pool

17  enclosure area --

18      A.   Correct.

19      Q.   -- and got into the pool?

20              All right.  Thank you.

21              You don't know what time the door

22  from the dining area to the pool area was opened,

23  do you?

24              MR. LESSNER:  Objection; form.

23

1          I think you said do you not know.

2          MR. LANDON:  No, I didn't.

3   BY MR. LANDON:

4      Q.   Do you know what time the pool door --

5      A.   I turned a corner, I saw a door open.

6      Q.   Okay.  And that door may have been opened

7   for a minute, or it may have been opened for 45

8   minutes for all you know?

9      A.   I don't know.

10     Q.   Okay.  And you don't know who opened it,

11  do you?

12     A.   Correct.

13     Q.   And you don't know whether it was opened

14  multiple times that morning, or just one time, or

15  two times, or three times that morning; correct?

16     A.   Correct.

17     Q.   Were any of your older kids capable of

18  opening that door?

19     A.   No.

20     Q.   Is that because it was too heavy to open

21  or --

22     A.   There's a lock on the top.

23     Q.   What if it's unlocked at the top, could

24  your oldest child have opened the door?