## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

JAMES H. GORBEY, JR., Administrator of the  :
Estate of Marissa Rose Fishman, Deceased,    :
                               :  Civil Action No.: 05-211-KAJ

            Plaintiff    :

vs.    :
                               :

RICHARD LONGWILL, BARBARA    :
LONGWILL, AIR BASE CARPET MART, INC.  :
d/b/a Air Base Distributing, Inc. d/b/a Air Base  :
Carpet Mart, AIR BASE DISTRIBUTING, INC.,  :
ASHLAND CONSTRUCTION COMPANY, INC.,    :
JOSEPH RIZZO & SONS CONSTRUCTION,    :
VINCENT RIZZO CONSTRUCTION CO., INC.  :
d/b/a Ashland Construction Co., Inc.,  JOSEPH V.    :
RIZZO, and VINCENT RIZZO,    :
                     Defendants    :

_____

## SUR REPLY IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS', ASHLAND CONSTRUCTION COMPANY, INC., VINCENT RIZZO CONSTRUCTION CO., INC., d/b/a ASHLAND CONSTRUCTION CO., INC. JOSEPH V. RIZZO, AND VINCENT RIZZO, MOTION FOR SUMMARY JUDGMENT AS TO <u>LIABILITY</u>

Respectfully submitted,
**Wetzel & Associates, P.A.**

BY: **/s/ Benjamin C. Wetzel, III**
**Benjamin C. Wetzel, III (I.D. No. 985)**
The Carriage House
1100 North Grant Avenue, Suite 201
Wilmington, DE 19805
(302) 652-1200
      and
**Kline & Specter, P.C.**

BY:   **/S/ Joshua Van Naarden, Esquire**
Matthew A. Casey, Esquire
Joshua Van Naarden, Esquire
1525 Locust Street, 19th Floor
Philadelphia PA 19102
(215) 772-1000

Date: June 13, 2006

## NATURE AND STAGE OF PROCEEDINGS

This case involves the August 30, 2002, drowning of an infant, Marissa Rose Fishman, age 20 months, at an indoor swimming pool located in the home of her maternal grandparents at 3220 Coachman Road, Wilmington, Delaware.  Plaintiff alleges, among other things, that workmen employed by the Moving Defendants ("The Ashland Defendants") left a door open to the home's indoor pool. Plaintiff 's decedent was allowed to enter the pool area and subsequently drowned.  This case involves claims for wrongful death and survival act damages.

The Ashland Defendants have moved for summary judgment as to liability, claiming the following: that the Ashland Defendants (1) owed had no duty to Marissa Fishman because the incident occurred in an area outside of their control; (2) There is no genuine issue of material fact that any of the Ashland Defendants opened the interior sliding glass door leading from the dining room to the enclosed pool; and (3) There are no genuine issues of material fact regarding Joseph Rizzo individually.  The Ashland Defendants are wrong.  Plaintiff filed his response in opposition to the Ashland Defendants motion for summary judgment as to liability on May 22, 2006, which is incorporated by reference as if fully stated herein.  On May 30, 2006, the Ashland Defendants filed a reply brief in support of their motion.

Since May 30, 2006, the parties have taken three (3) additional depositions of New Castle County Police Personnel and Plaintiff has served an expert report specifically on the issue of liability.  The aforementioned additional information

0

necessitates this Sur Reply in order to ensure this Court has all relevant information to

properly decide the issues presented in Defendants' motion.


**ARGUMENT**

I.    **RECENTLY DEPOSED NEW CASTLE COUNTY POLICE OFFICERS
CONFIRM THAT THE ASHLAND DEFENDANTS HAD A DUTY TO KEEP THE
SUBJECT DOORS CLOSED IN ORDER TO KEEP YOUNG CHILDREN FROM
ACCESSING THE POOL AREA**


On May 17, 2006, the deposition of New Castle County Police Officer John

Schlosser further confirmed the sworn deposition testimony of the Ashland Defendants

themselves, in that they had a duty to keep the subject doors closed in order to keep

young children from accessing the pool area.  Officer Schlosser was the first officer to

arrive at the 3220 Coachman Road address ["Longwill residence"].

Excerpted here is the deposition testimony of Officer Schlosser:

> A:    Apparently there was some construction workers working on the exterior
> of the house and they kept the sliding glass door which separates like a
> informal dining room area to the enclosed pool, they left the door open
> apparently to allow furniture to and from, I guess, different rooms.
> Apparently the child made its way through this sliding glass door, through
> a opening in the sliding glass door, and went into a pool area.

Dep. Trs. Schlosser, pg 11, Ln 9-17.

> Q.    We'll go through your report in a second, but is it your recollection
> that you were told that one of the construction workers left one of the
> sliding glass doors open?
> A.    Correct. I believe they left the door open so they could go to and from
> when transporting some furniture or some other items.

Dep. Trs.  Schlosser, pg 14, Ln 22-pg 15, Ln 4.

> Q.    And then when you go on to say that -- and, again, I'm paraphrasing

but that the open glass door was left open by construction workers working on the residence, that was something conveyed to you by both Barbara Longwill and Alexandra Fishman?

A.    Yes.

Dep. Trs. Schlosser, pg 36, Ln 21-pg 37, Ln 2.

Q.    Were you given any information as to why the construction workers were in the pool area?

A.    Not immediately. After reviewing some police reports, it kind of confirms my thoughts as to what --the best -- you know, my recollection as to what happened, I believe to move furniture. If I look at...I believe it's Officer Santos' supplement and I think there's a mention about moving some furniture. Looking back on that date, I believe the door was open to move some furniture back and forth between rooms.

Q.    And the information you received was that it was one of the construction workers who left that door open?

A.    Yes.

Dep. Trs. Schlosser, pg 49, Ln 19- pg 50, Ln 8.

Officer Schlosser's testimony, reveals that based on his investigation and interviews conducted at the scene that the Ashland Defendants were performing work related duties in the pool area and left the sliding glass door open, allowing Marissa Fishman access to the pool. Accordingly, since the Ashland Defendants were working in, and controlled, the pool area they had a duty to keep it safe and hazard-free. Unfortunately, the Ashland Defendants failed to maintain a safe work environment which caused the death of Marissa Fishman.

On June 9, 2006, the deposition of New Castle County Police Officer Michael Santos further confirmed that the Ashland Defendants were working in the indoor pool area and left the glass sliding door open. Officer Santos is a spanish speaking officer who was called to the Longwill residence to obtain the statements of spanish speaking

witnesses, Ashland construction worker Mr. Brito-Ortiz and the Longwill nanny, Ms.

Zavala.

Excerpted here is the deposition testimony of Officer Santos:

> Q.    Okay.  I want to do this in kind of chronological order.  You were directed to take the statements of two Spanish-speaking witnesses at the scene, correct?
> A.    That's correct.

Dep. Trs. Santos, pg 32,  Ln18-22.

> Q.    Which one did you talk to first, if you can remember?
> A.    I'm assuming, since the way they're listed on here, I spoke to Teresa Garcia Zavala first.

Dep. Trs. Santos, pg 32,  Ln18-22 - pg 33 Ln 2-l5.

> Q.    Okay.  That's fine.  As you began your interview with Miss Zavala, did you come to an understanding of what she did for a living?
> A.    Yes.  She was their, I guess -- I wouldn't consider it a nanny, but she was a
> live-in  family assistant.

Dep. Trs. Santos, pg 38,  L20 -  pg 39, Ln l1.

> Q.    Okay.  We'll go on. She also told you that she observed two subjects standing on the edge of the pool, correct?
> A.    That's correct.

Dep. Trs. Santos, pg 43,  Ln8-11.

> Q.  Okay.  That's fine.  Then Miss Zavala told you that she heard Rochelle yelled at the two, who we now have identified as construction workers, why didn't you move, correct?
> A.   That's correct.

Dep. Trs. Santos, pg. 45, Ln 2-6.

> Q.    Later on -- again, I'm just trying to confirm the statement -- Miss Zavala tells you that the two subjects, who we talked about were the construction workers, were seen in the pool area where one white male subject and

one Hispanic male subject -- were one white male subject and one Hispanic
male subject, correct?

A.     Yes.

Q.     And that she had seen both of these individuals moving one circular table and three chairs from the exterior patio area to the pool area through the unsecured door area, correct?

A.     That's correct.

Dep. Trs. Santos, pg 45 Ln 16- pg 46 Ln 4.

Q.     Did she tell you if she observed the individuals -- again, did you have an understanding that these individuals that she saw moving furniture were the two construction workers?

A.     That's correct.

Q.     Did she tell you if she had observed them taking one or more trips from the patio area to the pool area?

A.     I mean, there's only -- she's saying -- I mean, she advised me that they were   moving several pieces of furniture and there's only two of them. So I'm assuming it took more than one trip each.

Q.     She then goes on to tell you that the door in question that we're talking about is always closed when the children are in the house and that Marissa is
uncapable of opening the door by herself, correct?

A.     Yes.

Q.     Did she give you any theories at this point as to how the door was open to allow Marissa to get into the pool area?

A.     I documented that she stated that she believed that one of these two subjects,
the two construction workers moving furniture, had left -- left the door open between the kitchen and the pool area.

Q.     And that's memorialized in the last sentence of your written interview, correct?

A.     That's correct.

Dep. Trs. Santos, pg 46 Ln 9- pg 47 Ln 11

Q.     The second page of your interview is the interview conducted with Salvador
Brito-Ortiz,  correct?

A.     Correct.

Dep. Trs. Santos, pg 48 Ln 19-22

Q.    Do you recall that some of the windows around the indoor pool area had been boarded up with some type of wood?

A.    Well, I do recall that there was construction being done on those windows.

Q.    Then you go on to say that he advised you, Mr. Ortiz advised you, that he had been working on the  masonry on the patio and he had observed several children playing inside the residence near the kitchen area?

A.    That's correct.

Dep. Trs. Santos, pg 53 Ln 16- pg 54 Ln 5.

Q.    Do you recall what Mr. Ortiz' demeanor was like when you were taking this interview?

A.    Well, I can only assume from my three-line narrative that it was maybe a little shocked and -- I don't know.  I can't even -- I don't know even what word I can use right now.  I guess uncooperative.

Dep. Trs. Santos, pg 55 Ln 21 - pg 56 Ln 2

Q.    Did you ever ask Mr. Ortiz when you were taking his -- when you were conducting this interview whether he was in the pool area when Marissa walked into the pool area?

A.    I don't recall asking him, but based on Miss Zavala's statements, he was in the pool area when Marissa was found.  So I'm assuming he was there when -- I mean, he was there.

Dep. Trs. Santos, pg 69 Ln 5- 13


**II.    PLAINTIFF'S CONSTRUCTION EXPERT OPINES THAT THE ASHLAND DEFENDANTS HAD CONTROL OF THE INGRESS/EGRESS TO THE INDOOR POOL THEREBY CREATING A GENUINE ISSUE OF MATERIAL FACT**

Plaintiff's claims are supported by well-established Pennsylvania and Delaware

law and by a well qualified expert in the field of construction and pool related accidents

as a Civil Engineer, Alan E. Meade, P.E. states:

**Duty, custody and control**

Ashland/Rizzo undertook the responsibility of performing construction related work at the Longwill residence. Once Ashland/Rizzo began work on the Longwill property they were obligated to insure that the areas they were working on remained safe and hazard-

free to any residents/bystanders. Rizzo acknowledged his understanding of such duty when he testified that he knew that he had to be careful not to allow children to get into the pool area (Rizzo Jan. 30th depo. pg. 75).

> It is clear that the indoor pool area was a place where Ashland/Rizzo was doing construction related work. More specifically, on August 30, 2002, Ashland/Rizzo was doing work that required them to be inside the pool area. Therefore, Ashland/Rizzo had custody/control of the ingress/egress of the indoor pool area and were responsible for keeping the area safe and hazard free. They failed to do so, leaving the sliding glass door open and allowing Marissa to gain access to the indoor pool area.

June 9, 2006, expert report of Alan E. Meade, P.E. attached hereto as Exhibit "A."

Mr. Meade's findings and conclusions clearly establish the Ashland Defendants liability

for the death of Marissa Fishman.  Mr. Meade opines as follows:

### FINDINGS

Within the bounds of reasonable engineering probability, and subject to change if additional information becomes available, it is my professional opinion that:

1. The open glass sliding door was a dangerous condition and a direct cause of Marissa's drowning death.

2. The foreseeability of such type incident taking place if children got into the pool area was clear to Rizzo.

3. Ashland/Rizzo created the dangerous condition when Rizzo failed to close the glass sliding door after he exited the pool area.

4. Ashland/Rizzo failed to operate in a safe manner as required by the Wilmington City Code.

5. Ashland/Rizzo's leaving of the glass sliding door open violated national standards regarding pool safety.

6. Ashland/Rizzo's failure to close the door in leaving the pool enclosure disregarded widely known and publicized dangers regarding pool drownings of children.

6

7. Ashland/Rizzo undertook the responsibility for work outside and inside the pool area and had responsibility for safety of the residents.

8. Ashland/Rizzo was in control of the indoor and outdoor area.

9. But for Rizzo's mistake in leaving the sliding glass door open, Marissa would still be alive.

June 9, 2006, expert report of Alan E. Meade, P.E. attached hereto as Exhibit "A."

In sum, all of the above are genuine issues of material fact that require

evaluation by the

jury to determine who was ultimately responsible for Marissa Rose Fishman's tragic

death. Accordingly, Defendant Ashland Construction Company's Motion for Summary

Judgment should be denied.


III.  <u>CONCLUSION</u>

For the reasons set forth above, the plaintiff, James H. Gorbey, Jr.,

administrator of the estate of Marissa Rose Fishman, deceased, respectfully requests

that this Honorable Court deny the Motion for Summary Judgment as to liability made

by the Defendants, Ashland Construction Company, Inc., Vincent Rizzo Construction

Co., Inc., d/b/a Ashland Construction Co., Inc., Joseph Rizzo, and Vincent Rizzo.

Respectfully submitted,

**Wetzel & Associates, P.A.**

BY: **/s/ Benjamin C. Wetzel, III**
     **Benjamin C. Wetzel, III (I.D. No. 985)**
     The Carriage House
     1100 North Grant Avenue, Suite 201
     Wilmington, DE 19805
     (302) 652-1200
        and
     **Kline & Specter, P.C.**

BY:    **/S/ Matthew A. Casey**
     Matthew Casey, Esquire
     Joshua Van Naarden, Esquire
     1525 Locust Street
     19th Floor

Date: June 13, 2006    Philadelphia PA 19102
     (215) 772-1000
     Attorneys for Plaintiff

8