**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAMES H. GORBEY, JR., Administrator of the Estate of Marissa Rose Fishman, Deceased, | : | |
| | : | |
| | : | |
| Plaintiff | : | Civil Action No.  05-211-MPT |
| vs. | : | |
| | : | |
| RICHARD LONGWILL, BARBARA LONGWILL, | : | |
| ASHLAND CONSTRUCTION COMPANY, INC., | : | |
| JOSEPH RIZZO & SONS CONSTRUCTION, | : | |
| VINCENT RIZZO CONSTRUCTION CO., INC. | : | |
| d/b/a Ashland Construction Co., Inc., and | : | JURY TRIAL DEMANDED |
| VINCENT RIZZO, | : | |
| Defendants. | : | |
| _____ | : | |

**PROPOSED PRETRIAL ORDER**

This matter comes before the court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure.

**Plaintiff's Counsel**
Lead Counsel
Jonathan M. Cohen, Esquire
James J. Waldenberger, Esquire
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102 (215) 772-1000

Local Counsel
Yvonne Saville, Esquire
Weiss & Saville
1220 Market Street, Suite 604
Wilmington, DE 19899 (302-656-0400)

**Defendants Counsel:**
Defendant Richard and Barbara Longwill
Daniel J. Hart, Esquire
Kevin J. Connors, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1220 North Market Street, 5th Floor
Wilmington, Delaware (302) 552-4300.

Defendant Ashland Construction Company, Inc.
Vincent Rizzo Construction Co. d/b/a Ashland
Construction Company, and Vincent Rizzo
Roger D. Landon, Esquire
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, Delaware (302) 472 8100

## I.      Nature of the Case

This is a Wrongful Death and Survival Action that involves the August 30, 2002, drowning of Marissa Rose Fishman, at an indoor swimming pool located at the home of her maternal grandparents at 3220 Coachman Road, Wilmington, Delaware. Plaintiff's decedent was approximately two years of age at the time of her death. At the time of her death, she was visiting her grandparents' house in Delaware. Plaintiff alleges that workmen employed by the Longwill Defendants left a door open to the home's indoor pool, and that Plaintiff 's decedent was allowed to enter the pool area and, ultimately, the pool itself.  The Longwill Defendants and the Ashland Defendants did not obtain a required permit for the work by the pool, thereby avoided safety inspections, and did they have the required safety devices and precautions at the pool such as alarms, door locks, etc. Plaintiff further alleges that the indoor pool constitutes an artificial condition on the Longwill Defendants' premises thus creating an attractive nuisance. The Longwill Defendants failed to exercise reasonable care to eliminate the danger presented by the indoor pool. Defendants deny liability and damages.

## II.     Jurisdiction

A.      This is an action for:

Plaintiff is claiming damages under Delaware's Wrongful Death and Survival Statutes, 10 Del. C. § 3742 and 10 Del. C. § 3704, for estate administration expenses, for the estate's future lost earning capacity, and for the pain and suffering endured by Plaintiff 's decedent during the drowning episode.  Plaintiff is also claiming damages under the Wrongful Death Statute and Delaware law for the benefit of and on behalf of the parents and siblings of the decedent.

B.      The jurisdiction of the Court is not disputed.

Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as a civil action in which  the amount in controversy exceeds the sum or value of the applicable limits for diversity jurisdiction, exclusive of interest and costs, and it a controversy between citizens of different states; Plaintiff is a citizen of the Commonwealth of Pennsylvania; the defendants are citizens of Delaware.[1]

---

[1]Plaintiff originally filed this case in the Philadelphia Court of Common Pleas.  On August 27, 2004, the defendants removed it to the United States District Court for the Eastern District of

C.      The Ashland and Longwill defendants deny that the plaintiffs have any claim for the estate's future lost earning capacity as no such claim exists under Delaware law under the circumstances of this case.

## III.     Uncontroverted Facts

The following facts are not disputed or have been agreed to or stipulated to by the parties:

On August 30, 2002, Marissa Rose Fishman drowned at an indoor swimming pool located at the home of her maternal grandparents at 3220 Coachman Road, Wilmington, Delaware. Plaintiff's decedent was approximately two years of age at the time of her death. On August 30, 2002, Defendant, Ashland Construction Co., Inc., was hired by the Longwill Defendants to perform construction related work on the 3220 Coachman Road address.

## IV.     Proposed Amendments to Pleadings

The Ashland defendants request that the parties stipulate to the dismissal of Joseph Rizzo & Sons Construction and Vincent Rizzo Construction Company, Inc.   The actual corporate entity for whom Vincent Rizzo was working at the house at the time of the incident was Ashland Construction Company, Inc.

## V.     Issues of Law

The Defendants claim that the following are issues to be decided by the Court:

A.  Whether the Complaint fails to state a claim upon which relief can be granted against the Ashland and Longwill defendants.

B.  Whether the Amended Master Complaint is improperly filed as plaintiff's attorneys are attempting to represent parties with potential wrongful death claims with whom they do not have an attorney client relationship and at least one of whom has no interest in pursuing wrongful death claims in this matter.

C.  Whether the purported wrongful death claims are barred by the applicable statute of limitations.

D.  Whether the claims against the Ashland defendants are barred by a superseding/intervening cause (i.e., the unforeseeable lack of supervision and care for Marissa by multiple adult family members in the household including, but not limited to, Rochelle Fishman

---

Pennsylvania and on March 2, 2005, the case was transferred to this Court by stipulation of all parties.

and Barbara Longwill).  (The Longwills join in this defense to the extent it applies to persons other than Barbara Longwill.)

       E.  Whether the Ashland defendants owed any duty of care to Marissa Fishman.

       F.  Whether, if Rochelle Fishman is deemed to be a party pursuing a claim for emotional distress or any other permissible claim under the wrongful death statute, her comparative negligence bars her claim.

       G.  Whether the claims for the hypothetical residual value of Marissa Fishman's Estate as opined by Hopkins are permissible recoverable claims under Delaware law.

       H.  Whether Meade's opinions as to Ashland defendants' alleged culpability are admissible.

       I.  Whether Hood's opinions regarding Marissa's alleged conscious pain and suffering are admissible or if he is qualified to render such opinions.

## VI.    Issues of Fact and Expected Proof

    A.    Ashland Issue.

       The central liability issue is how Marissa Fishman ended up in the swimming pool. Ashland defendants expect the facts will show that for a period of at least 30 minutes, no adult in the Longwill household was supervising Marissa or had any idea as to her whereabouts.  The facts will also show that Vincent Rizzo, through his company Ashland Construction Company, Inc., had completed all work around the indoor pool enclosure weeks before this incident occurred. On the day of this incident, he was working with his employee installing pavers on the patio outside the pool enclosure.  None of the construction work that he was doing through his company for the Longwills on that date involved the pool enclosure or the interior of the house. The facts will show that Mrs. Longwill asked Vincent Rizzo if he could bring the table and chairs which were located outside in the patio area through the interior of the house and put them in the pool enclosure area because she was having a party that evening and wanted to seat people in the pool enclosure area.  The facts will show that Mrs. Longwill brought Vincent Rizzo through the house and into the pool enclosure area to show him where to put the table and chairs.  At the time she brought him into the pool enclosure area, the sliding glass door separating the living space in the house from the pool enclosure area was already opened or was opened by Mrs. Longwill. After she showed him where to put the table, he left the pool enclosure area.  Mrs. Longwill left along with him.  She did not close the door to the pool enclosure area.  Mr. Rizzo went back outside and cleaned off the table and chairs with his co-worker.  That process took approximately 30 minutes.  He then brought the table and chairs back inside with his co-worker.  When he brought those items inside, the interior sliding glass door to the pool area was open.  As they brought the table into the pool area, Rochelle Fishman came running into the pool enclosure area screaming as she had located her daughter who was face down floating in the pool.

B.    Ashland and Longwill Issue.

There are mixed issues of fact and law as to what damages are recoverable under the survival claim and the wrongful death claim. The defendants contend that the proposed expert testimony from Dr. Hood regarding Marissa's alleged conscious pain and suffering is inadmissible and, therefore, plaintiff will not be able to prove damages for conscious pain and suffering as part of the survival action.  Further, there is a mixed issue of fact and law as to what damages are recoverable under the alleged wrongful death claim.  The defendants' position is that the siblings have no claim for pain and suffering under the plain language of the wrongful death statute since the mother and father of Marissa  Fishman are still alive.  The defendants further take the position that the father has no claim because he is not a party in the case and in fact terminated his representation with the Kline & Specter firm before the lawsuit was filed.  The mother does not have a claim for emotional distress because she was not a party to the case and has expressly testified at deposition that she does not agree with the fact that the lawsuit was even filed.

C.    Longwill Issue.

The Longwills contend that the facts will show that on the morning in question, Vincent Rizzo and Salvador Ortiz-Britto, employees of the Ashland defendants, were working at the Coachman address installing pavers on the patio outside of the pool enclosure.  Barbara Longwill asked the workers to move a table and chairs which were located outside in the patio area to the pool area.  Ms. Longwill showed Mr. Rizzo where she would like the table and chairs placed.  Ms. Longwill and Mr. Rizzo left the pool area, and Ms. Longwill closed the pool door behind her.  At some point afterwards, either someone from the house or the employees of Ashland Construction Company opened the pool door permitting Marissa Fishman to enter the pool area. During the entire time, Barbara Longwill was in the kitchen preparing food for a party the Longwills were having that evening.

## VII.    Brief Statement of Defenses

A.    Ashland Defenses

Ashland defendants incorporate all of the defenses set forth in the Issues of Fact and Issues of Law.  Ashland defendants deny that they had any duty to Marissa Fishman, if they did owe such a duty, they did not breach that duty, and even if they breached that duty, their liability is cut off by the superseding/intervening negligence of Rochelle Fishman, Barbara Longwill and other adult family members in the house who failed to supervise Marissa Fishman. In the event that any liability is assessed against the Ashland defendants, they contend that the damages recoverable are limited to claims of the Estate for medical expenses for Marissa Fishman.

B.    Longwill Defenses

The Longwills contend that they did not act in a negligent manner and if they acted in a negligent manner, their liability is cut off by the superseding/intervening negligence of other adult family members in the house who failed supervised Marissa Fishman and/or the actions of the Ashland defendants.  In the event any liability is assessed against the Longwill defendants, they contend that the damages recoverable are limited to the claims of the estate for medical expenses for Marissa Fishman.

## VIII.   Witnesses

    A.    List of witnesses the Plaintiff expects to call:

        1.    Expert witnesses:

           (a)    David Hopkins ASA, MAAA; Objection.  See XI.B.  Defendants' Motions in Limine.

           (b)    Ian Hood, MB, ChB, JD; Objection.  See XI.B.  Defendants' Motions in Limine.

           (c)    Alan E. Meade, P.E.; Objection.  See XI.B.  Defendants' Motion in Limine.

        2.    Non-expert witnesses:

           (a)    Eric C. Fishman;

           (b)    Rochelle Longwill Fishman;

           (c)    Barbara H. Longwill;

           (d)    Richard Longwill;

           (e)    Alexandra Soshana Fishman;

           (f)    Samuel Fishman;

           (g)    Deborah Fox;

           (h)    Harrison Fishman;

           (i)    Allison Ann Lucas;

           (j)    Helen Longwill;

     (k)       New Castle Police Detective Claudine Malone;

     (1)       New Castle Police Officer Michael Santos;

     (m)      New Castle Detective K. Murphy;

     (n)       New Castle Police Officer Marc Alfree;

     (o)       New Castle Police Officer John W. Schiosser;

     (p)       Detective George Bell;

     (q)       Detective Joseph Trala;

     (r)       Tim Gorbey, Jr., Esquire;

     (s)       Vincent Rizzo;

     (t)       Theresa Garcia Zavala;

     (u)       John Magner;

     (v)       Glen Stryjewski, M..D.;

     (w)      Kathy Palmer. M.D.;

     (x)       Records Custodian of Alfred I. Dupont Institute;

     (y)       Records Custodian of New Castle County Police Department;

     (z)       Records Custodian of New Castle County EMS;

     (aa)     Gerald Cooke, Ph.D.;  Defendants object.

     (bb)     Dr. Melanie Lewis of Silverside Counseling Center;  Defendants object.

     (cc)     Dr. Lee Anderson; Defendants object and

     (dd)     Dr. Marla Issacs.  Defendants object.

B.     List of witnesses Defendants expect to call:

    1.     Expert witnesses:

        (a)      Emanuel Rubin, M.D.;

    2.     Non-expert witnesses:

        (a)      The Longwill Defendants reserve the right to call any non-expert witness identified by Plaintiff, to which the Longwill Defendants do not raise an objection, and Salvador Ortiz-Britto.

        (b)      The Ashland Defendants reserve the right to call any non-expert witness identified by Plaintiff, to which the Ashland Defendants do not raise an objection.

## IX.    Exhibits

    A.    Plaintiff's Proposed Exhibits:

        (1)    Expert Report of Alan Meade, P.E.; Objection, F.R.E. 402, 403, 702, 802

        (2)    Curriculum Vitae of Alan Meade, P.E.; Objection, F.R.E. 402

        (3)    Expert Report of David Hopkins, ASA, MAAA; Objection, F.R.E. 402, 403, 702, 802

        (4)    Curriculum Vitae of David Hopkins, ASA, MAAA; Objection, F.R.E. 402,

        (5)    Expert Report of Ian Hood, MB, ChB, JD; Objection, F.R.E. 402, 403, 702, 802

        (6)    Curriculum Vitae of Ian Hood, MB, ChB, JD; Objection, F.R.E. 402, 702

        (7)    New Castle County Police Report dated 8/30/02; Objection, F.R.E. 402, 403, 802

        (8)    Supplemental Reports of New Castle County; Objection, F.R.E. 402, 403, 802

        (9)    Department of Public Safety Supplemental Report Detective George Bell; Objection, F.R.E. 402, 403, 802

        (10)   Department of Public Safety Supplemental Report Detective Joseph Trala; Objection, F.R.E. 402,403, 802

        (11)   Department of Public Safety Supplemental Report Detective Murphy; Objection, F.R.E. 402, 403, 802

(12)   New Castle County Police Department Videotape of the Longwill
        residence; Objection, F.R.E. 402, 403, 802.

(13)   Color Photographs of scene of accident set 1 and 2 from New Castle
        County Police Department;

(14)   Ashland Invoices from 1997-2003; Objection, F.R.E. 402,

(15)   Sierra Claim Services Investigative File; Objection, F.R.E. 402, 403, 802

(16)   Plaintiff's Amended Civil Action Master Complaint filed in the U.S.D.C.
        for District of Delaware; Objection, F.R.E. 402, 802

(17)   Plaintiff's Philadelphia Federal Court Complaint; Objection, F.R.E. 402,
        802

(18)   All Interrogatories and documents exchanged between the parties;
        Defendants reserve all objections

(19)   Deposition transcript and exhibits of Corporal Claudine Malone;
        Objection, F.R.E. 402,403, 802

(20)   Deposition transcript and exhibits of Office John W. Schlosser; Objection,
F.R.E. 402, 403, 802

(21)   Deposition transcript and exhibits of Officer Marc Alfree; Objection,
        F.R.E. 402, 403, 802

(22)   Deposition transcript and exhibits of Salvador Ortiz-Britto; Objection,
        F.R.E. 402, 403, 802

(23)   Deposition transcript and exhibits of Richard Longwill; Objection, F.R.E.
        402, 403, 802

(24)   Deposition transcript and exhibits of James H. Gorbey, Esquire;
        Objection, F.R.E. 402, 403, 802

(25)   Deposition transcript and exhibits of Eric Fishman; Objection, F.R.E. 402,
        403, 802

(26)   Deposition transcript and exhibits of Vincent Rizzo, December 2004;
        Objection, F.R.E. 402, 403, 802

(27)    Deposition transcript and exhibits of Vincent Rizzo, January 2006; Objection, F.R.E. 402, 403, 802

(28)    Deposition transcript and exhibits of Arnold W. Frey; Objection, F.R.E. 402, 403, 802

(29)    Deposition transcript and exhibits of Rochelle Longwill; Objection, F.R.E. 402, 403, 802

(30)    Deposition transcript and exhibits of Barbara Longwill; Objection, F.R.E. 402, 403, 802

(31)    Medical Records from Alfred I. Dupont Institute; Objection, F.R.E. 402, 403, 802

(32)    Medical Records from New Castel County EMS; Objection, F.R.E. 402, 403, 802

(33)    Photographs of Marissa Fishman and family; Objection, F.R.E. 402, 403

(34)    Statement of Richard Longwill; Objection, F.R.E. 402, 403, 802

(35)    Statement of Rochelle Longwill Fishman; Objection, F.R.E. 402, 403, 802

(36)    Death Certificate

(37)    1996 BOCA National Building Code

(38)    The Wilmington City Code including, but not limited to, Chapter 4, Section 108.1.1

(39)    The National Spa and Pool Institute, Objection, F.R.E. 402, 403, 802

(40)    Plaintiff reserves the right to use any exhibits identified by other parties except to the extent they are objectionable.


B.    Longwill Defendants' Proposed Exhibits:

(1)    Expert report of Emanuel Rubin, M.D.;

(2)    Curriculum Vitae of Emanuel Rubin, M.D.;

(3)    Color photographs of scene taken by Sierra Claims Services;

(4)    Documents filed in the Court of Common Pleas, Delaware County, PA, relating to the Estate of Marissa Fishman;

(5)    The Longwills reserve the right to use any non-objectionable exhibit identified by other parties.

C.    Ashland Defendants' Proposed Exhibits:

(1)    Police video and photographs, Objection to video, F.R.E. 402, 403, 802.

(2)    Vincent Rizzo Deposition Exhibits.

(3)    Barbara Longwill written statement marked as Longwill Deposition Exhibit 1.  Objection.  F.R.E. 402, 403, 802.


## X.    Damages

A.    Plaintiff's Damages/Allegations:

Plaintiff has retained Dr. Ian C. Hood, MB, ChB. as an expert in forensic pathology. Dr. Hood is a Deputy Medical Examiner for the City of Philadelphia Medical Examiner's Office and fellow of the National Association of Medical Examiners and the American Board of Pathology. In his report dated January 24, 2006, Dr. Hood sets forth:

1.    Pain and Suffering

"The sensation of wanting to breathe but being unable to do so is extremely distressing and within common experience. A 20 month old could be expected to experience the same level of pain and suffering during this period of struggling for breath as would any competent adult and although not as capable as an adult of contemplating her death as the expected outcome if she cannot succeed in drawing breath while in the water, she would nonetheless be as panic stricken at her inability to breathe as would any adult. There was no reason to indicate that Marissa would not have been as frantic and panic stricken as any conscious individual in the same circumstances.

It is therefore my opinion offered within a reasonable medical certainty and in light of my training, education and experience that Marissa Rose Fishman most probably suffered one to two minutes of extreme air hunger as she struggled at the water s surface and started to drown with its consequent pain and suffering and the

increasing panic and terror that could be expected to consume a 20 month old even if not capable of contemplating that their life was coming to an end. I hope these opinions and observations are of assistance to you."

(See Report of Ian C. Hood, MB, ChB, JD, dated 1/24/06, attached as Exhibit "A".)

   2.    Loss of Earning Capacity and Fringe Benefits

        Plaintiff has retained David L. Hopkins, ASA, MAAA. as an actuarial/economic expert.  Mr. Hopkins is an actuarial-economic consultant and economic expert, and fellow of the American Society of Actuaries. In his report dated May 16, 2006, Mr. Hopkins sets forth Decedent's economic losses as follows:

**0% NET INTEREST**

RETIREMENT AT AGE 60

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $1,375,965 | $1,694,883 | $2,245,581 |
| Future Lost Fringe Benefits | 393,133 | 470,801 | 598,822 |
| TOTALS | $1,769,098 | $2,165,684 | $2,844,403 |

RETIREMENT AT AGE 65

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $1,557,013 | $1,930,283 | $2,575,814 |
| Future Lost Fringe Benefits | 444,861 | 536,190 | 686,884 |
| TOTALS | $2,001,874 | $2,466,473 | $3,262,698 |

RETIREMENT AT AGE 70

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $1,738,061 | $2,165,684 | $2,906,046 |
| Future Lost Fringe Benefits | 496,589 | 601,579 | 774,946 |
| TOTALS | $2,234,650 | $2,767,263 | $3,680,992 |

**2% NET INTEREST**

RETIREMENT AT AGE 60

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $ 702,964 | $ 846,885 | $1,097,558 |
| Future Lost Fringe Benefits | 200,847 | 235,246 | 292,682 |

|  | TOTALS | $ 903,811 | $1,082,131 | $1,390,240 |
|---|---|---|---|---|

RETIREMENT AT AGE 65

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $ 762,010 | $ 923,658 | $1,205,260 |
| Future Lost Fringe Benefits | 217,717 | 256,572 | 321,403 |
| TOTALS | $ 979,727 | $1,180,230 | $1,526,663 |

RETIREMENT AT AGE 70

|  | Bachelor's Degree | Master's Degree | Ph.D Professional Degree |
|---|---|---|---|
| Future Lost Earning Capacity | $ 815,491 | $ 993,193 | $1,302,808 |
| Future Lost Fringe Benefits | 232,997 | 275,887 | 347,415 |
| TOTALS | $1,048,488 | $1,269,080 | $1,650,223 |

(See Report of David L. Hopkins, ASA, MAAA dated 5/16/06 attached as Exhibit "B.")

      3.    Plaintiff is also making a claim for all damages available to the beneficiaries under Delaware law.

      B.    Longwill Defendants' Damages/Allegations:

      The Longwill defendants refer to the Ashland and Longwill issues presented at VI.B.  The Longwill defendants also refer to the Motions in Limine at XI.B.

      C.    Ashland Defendants' Damages/Allegations:

      The Ashland defendants refer to the Ashland and Longwill issues presented at VI.B.  The Ashland defendants also refer to the Motions in Limine at XI.B.

## XI. Motions in Limine

### A.    Plaintiff

      (1)  Plaintiff moves in limine to preclude any evidence or testimony from Emanuel Rubin, M.D. because his only opinion is that Dr. Ian Hood is not qualified to testify as to pain and suffering.  He does not render an opinion on any relevant issue of the case; only the qualifications of other expert witnesses.  This can be accomplished by cross of Dr. Ian Hood.

      (2)  Plaintiff moves in limine to preclude any and all evidence regarding the divorce of decedent's parents, Rochelle Longwill and Eric Fishman.

B.    **Defendants**

(1)  Ashland and Longwill defendants move in limine to preclude any evidence or testimony from David L. Hopkins as to the residual value of Marissa Fishman's hypothetical estate had she lived to her normal life expectancy.  The claim is not a recoverable item of damages under the survival claim nor under the alleged wrongful death claim. Under the survival claim, the administrator of the estate has the same cause of action that the decedent had prior to her death. That means the damages recoverable by the estate under the survival claim are damages for conscious pain and suffering from the time of injury until the time of death, medical expenses in connection with injury and death, and any loss of earnings from the time of injury to the death. Bennett v. Andre, Del. Supr., 252 A.2d 100 (1969); Del. Supr. 270 A.2d 173 (1970).  See also, Magee v. Rose, Del. Super., 405 A.2d 143 (1979).  Any damages that would have been incurred or were incurred subsequent to the death are not recoverable under the survival statute.  Loden v. Getty Oil, Del. Super., 340 A.2d 174 (1975); Del. Supr., 359 A.2d 161 (1976).  Likewise, the claim for the residual value of Marissa Fishman's estate is not an element of damages recoverable pursuant to the wrongful death statute, 10 Del.C. Section 3724.  A wrongful death action compensates the decedent's loved ones rather than the estate.  Frantz v. United States, 791 F.Supp., 445 (D.Del. 1992).  The damages that can be considered by the jury in awarding damages pursuant to the wrongful death statute are delineated in 10 Del.C. Section 3724(d). Subsection (1) permits recovery for the "deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased." The potential beneficiaries are the older siblings and the parents.  Neither the older siblings nor the parents would have any reasonable expectation of inheriting Marissa Fishman's residual estate upon her death at her normal life expectancy.  Her parents would likely be dead and her siblings, who are all older than her, cannot reasonably expect to inherit her estate.  None of the other subsections of subsection (d) provides any basis for this particular claim of damages.

(2)    Ashland and Longwill defendants move in limine to preclude any claims, evidence or argument concerning any emotional distress suffered by Marissa's siblings or parents.  Under the Wrongful Death Statute, 10 Del.C. Section 3724(d)(5), mental anguish of certain beneficiaries is a recoverable claim under certain circumstances.  In this case, because Marissa's parents are still alive, her siblings have no valid claim for mental anguish.  The Court should not permit the jury to consider any claims of mental anguish for the father or the mother because neither the father nor the mother is a plaintiff in the case actually making a claim.  While the Court has previously held that the estate can make the claim on behalf of the beneficiaries, such a claim should not be permitted on behalf of the beneficiaries without their express consent to those claims being made. In this case, Rochelle Fishman has testified under oath at deposition that she disagrees with the fact that the lawsuit was even filed.  Eric Fishman was originally a client of Kline & Specter with respect to this matter.   However, once it was determined that he could not be the executor of Marissa's estate, he and the Kline & Specter firm terminated the attorney client relationship.  He is no longer represented by Kline & Specter, is not a party to the lawsuit and has not affirmatively consented to have his claims presented by the administrator of the estate.  Moreover, the Ashland defendants contend the purported wrongful death claims are barred by the applicable statute of limitations as they were not pled within two years of the date of the death of Marissa Fishman.

(3)    Ashland defendants move to exclude any testimony by plaintiff's alleged liability expert, Alan Meade, P.E.  Meade issued a report dated June 8, 2006 setting forth a number of conclusions about the Ashland defendants' alleged responsibility for the death of Marissa Fishman (see report attached as Exhibit "C").  Mead was thereafter deposed by counsel.  Meade opines that the open door was a dangerous condition and a direct cause of Marissa's drowning death.  He opines that type of incident was foreseeable to Mr. Rizzo, that Mr. Rizzo created the dangerous condition when he failed to close the sliding door after exiting the pool area, that Rizzo failed to operate in a safe manner as required by the Wilmington City Code, that the leaving of the door open violated national standards regarding pool safety, that his failure to close the door when leaving the pool enclosure disregarded widely known and publicized dangers regarding pool drownings of children, that he undertook the responsibility for work outside and inside the pool area and the responsibility for the safety of the residents, that he was in control of the indoor and outdoor area and that, but for his mistake in leaving the door open, Marissa would still be alive.  First, the Court has already ruled that Rizzo owed a duty of care to Marissa if in fact he is the individual responsible for opening the interior sliding glass door.  Thus, Meade's opinions regarding duty are not admissible because they constitute improper legal opinions upon which the Court has already ruled as a matter of law. His conclusion that Rizzo opened the door or "failed to close the door after exiting the pool area" is not an expert opinion.  Rather, it is an inadmissible lay opinion arrived at by Meade after reviewing all of the deposition testimony and statements given by witnesses.  The opinion that Rizzo somehow violated the Wilmington City Code was fleshed out at deposition.  In Meade's attempt to apply some sort of engineering expertise to the case, he testified that the Wilmington City Code adopted the BOCA Code which requires that for any major construction to a pool area, the door would have to be retrofitted either with a self-closing mechanism or some sort of beeper mechanism.  He opined that if the Ashland defendants had gotten a building permit like they were supposed to do, a building inspector would have likely determined that the retrofitting had not been done.  He opines that retrofitting the door would have prevented the death.  However, he also admitted at deposition that there is no express provision in the BOCA Code indicating when the retrofitting has to be done during construction.  He further admitted that the construction work by the Ashland defendants was not yet completed at the time this incident happened and, therefore, there was no requirement that the retrofitting had to be done by the date of the incident.  Thus, his opinion regarding the failure to get a permit could not have been a proximate cause of the injury and is, therefore, irrelevant.

(4)    The Ashland and Longwill defendants move to exclude and/or limit the testimony of Dr. Hood.  Dr. Hood is a forensic pathologist with training solely in the area of pathology.  Dr. Hood steps beyond his area of expertise when he opines that "there was no reason to indicate that Marissa would not have been frantic and panic stricken as any conscious individual in the same circumstances."  He further opines that Marissa had an increased sense of panic and terror despite the fact that she was not capable of contemplating that her life was coming to an end.  Federal Rules of Evidence permits expert testimony by a "qualified" witness.  That testimony must be based upon facts or data which is the product of reliable principle and methods.  Federal Rule of Evidence 703 similarly requires that the opinions of an expert be disclosed prior to trial, and the facts or data relied upon for those opinions must be reasonable relied upon by experts in a particular field in forming opinions or inferences upon the subject.  Plaintiff admits that Dr. Hood is only an expert in forensic pathology.  He is not trained in the area of child psychology or infant

psychology.  The Longwill defendants have produced the report of Emanuel Rubin, M.D., a copy of which is attached as Exhibit "D".  Dr. Rubin states that Dr. Hood's comments about the emotional reaction of an infant to drowning are far beyond the training and experience of a pathologist.  As such, Dr. Hood should be precluded from testifying or commenting on the emotional reaction of Marissa Fishman.

(5)     The Longwill defendants move to limit any argument that the Longwills were in any manner responsible to retrofit the pool door with either a self-closing mechanism or an audible alarm when opened.  Plaintiff's expert on this subject, Alan Meade, P.E., admits that the Wilmington City Code was amended after the pool was installed, and the subject pool and door were "grandfathered" into the pre-existing code.  Furthermore, Dr. Meade opines that the Ashland defendants were the "experts" in the pool renovation, and they should have alerted the Longwills to the need to upgrade or retrofit the door.

## XII.   Bifurcated Trial

Bifurcated trial is not desired.

## XIII.   Trial Briefs

## XIV.   Limitations, Reservations and Other Matters

A.     Length of Trial. The probable length of trial is 5 days.

Mark appropriate box:        Jury           _X_

Non-jury        _____

B.     Number of Jurors. There shall be twelve jurors and two alternate jurors.

C.     Jury Voir Dire.

To be supplied in accordance with the court's deadlines established at the Pre-Trial Conference.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

DATED: _____    _____

                              UNITED STATES DISTRICT JUDGE


                              APPROVED AS TO FORM AND SUBSTANCE


                              _____


                              _____


                              _____


                              _____

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 28, 2008, I electronically filed the Proposed Pretrial Order

with the Clerk of the court using CM/ECF which will send notification of such filing(s) to the

following:


<u>Local Counsel</u>
Yvonne Saville, Esquire
Weiss & Saville
1220 Market Street, Suite 604
Wilmington, DE 19899 (302-656-0400)

<u>Defendant Ashland Construction Company, Inc.</u>
<u>Vincent Rizzo Construction Co. d/b/a Ashland</u>
<u>Construction Company, and Vincent Rizzo</u>
Roger D. Landon, Esquire
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, Delaware (302) 472 8100


I hereby certifty that on March 28, 2008, I have mailed by United States Postal Service, the

Proposed Pretrial Order to the following non-registered participants:

**Plaintiff's Counsel**
<u>Lead Counsel</u>
Jonathan M. Cohen, Esquire
James J. Waldenberger, Esquire
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102 (215) 772-1000


Marshall, Dennehey, Warner,
Coleman & Goggin

By: _____
Kevin J. Connors, Esquire (I.D. No. 2135)
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899-8888
(302) 552-4302